[No. 1332.   Decided May 19, 1894.]

WATSON ALLEN, *Respondent*, v. W. T. FORREST, *Commissioner of Public Lands of the State of Washington, Appellant.*

TIDE LANDS — VESTED RIGHTS — AUTHORITY OF A STATE TO ALTER LAW GIVING PREFERENCE RIGHT OF PURCHASE.

The act of March 26, 1890, giving the improver of tide lands prior to that date a preference right of purchase does not constitute a contract between the state and the improver giving him any vested rights in such lands, but the right of purchase given him is merely a privilege which he has a right to exercise only while the law remains in force; and in case such privilege has not been exercised, the state may, by a subsequent law, provide for the use and occupation of the tide lands for other purposes without its being an impairment of any obligation due to the prior improver thereof.

*Appeal from Superior Court, King County.*

*W. C. Jones,* Attorney General, and *Semple & Hale,* for appellant:

The plaintiff's theory is, that his right to purchase is an existing interest in the land; but we contend that there are no existing vested rights as against the state; even in the improvers who have kept up or renewed their structures

on the faith of the law of March 26, 1890.   They and
their assigns deal with an inchoate right in full view of the
contingency that the legislature may destroy its founda-
tion without prejudice.   It is a mere tender, that can be
withdrawn at any time before execution.   The right given
to remain upon the land is not a grant, but a mere license,
and can be revoked without notice by the legislature.
*Dolittle v. Eddy*, 7 Barb. 74; *Stone v. Sprague*, 20 Barb.
509.   A license cannot, under any circumstances, become
irrevocable by estoppel, when the effect would be to create
an interest in land. *Jackson, etc., Co. v. Railroad Co.*, 4 Del.
Ch. 180; 2 Wash. Real Prop. 669.   A mere expectation
of future benefits or interest, founded upon the continuance
of existing general laws, is not a vested right. *Clarke v.
McCreary*, 12 Smedes & M. 347; *Merrill v. Sherburne*, 1
N. H. 213; Cooley, Const. Lim. 333, 345.   A grant of a
mere license or gratuity, which imposes no new duty or
additional burden, and is without consideration, is revoca-
ble at the will of the legislature. *Philadelphia, etc., Ry.
Co.'s Appeal*, 102 Pa. St. 123; *Derby Turnpike Co. v.
Parks*, 10 Conn. 522; *Gregory v. Shelby College*, 2 Metc.
(Ky.) 589; *State v. Morris*, 77 N. C. 512.   So long as
the contract remains executory it may be revoked by the
legislature, if not founded on an executed consideration.
*Trustees v. Rider*, 13 Conn. 87; *Lumber Co. v. Common-
wealth*, 100 Pa. St. 438; *Slack v. Railroad Co.*, 13 B.
Mon. 1.   It makes no difference if the efforts of plaintiff
to accept are defeated by defendant. *Crocker v. Railroad
Co.*, 24 Conn. 249.   The claim of plaintiff under the law
of March 26, 1890, is not nearly so strong as that of a
claimant under the preëmption laws of the United States
and of the different states that own uplands within their
borders, and it is settled law that the latter have no vested
rights and no contract rights until the processes of acqui-
sition have matured. *Frisbie v. Whitney*, 9 Wall. 187;

*Hutchings v. Low*, 15 Wall. 77; *Campbell v. Wade*, 132 U. S. 34.

*Arthur, Lindsay & King*, for respondent.

The opinion of the court was delivered by

DUNBAR, C. J. — The plaintiff, claiming right to purchase certain tide lands under the act of March 26, 1890, brought his action against the defendant, W. T. Forrest, commissioner of public lands, to restrain him from entering into a contract with one Eugene Semple, who had made application under the act of March 9, 1893, entitled "An act prescribing the ways in which waterways for the uses of navigation may be excavated by private contract, providing for liens upon tide and shore lands belonging to the state, granting rights-of-way across lands belonging to the state." The complaint set up the necessary qualifications of the plaintiff, under the act of March 26, 1890. Defendant demurred to the complaint; the demurrer was overruled, and the defendant, resting upon his demurrer, refused to plead further. Judgment was awarded the plaintiff, and defendant appeals to this court.

The sole question to be determined is, does the law of March 26, 1890 (Laws 1889–90, p. 431), entitled "An act for the appraising and disposing of the tide and shore lands belonging to the State of Washington," constitute a contract between the state and the class of privileged persons mentioned in said act, which the legislature cannot annul or change by a subsequent enactment. Or, in other words, did the said class of privileged persons obtain any vested rights in the tide lands of the state by reason of said enactment, and is the said act of March 9, 1893 (Laws, p. 241), an impairment of the obligation of a contract between the state and the said privileged class of persons.

It has been the uniform holding of this court that the ownership of the tide and shore lands is in the State of

Washington; and the power to deal conclusively with them is in the state, subject only to the power of the federal government to prevent the obstruction, impairment or injurious modification of navigable waters. See *Eisenbach v. Hatfield*, 2 Wash. 236 (26 Pac. 539), and all subsequent cases on that subject.

The attorneys for both appellant and respondent have prepared elaborate and painstaking briefs in this case, but it seems plain to us that the respondent obtained no vested rights whatever under the act of March 26, 1890; that no contract whatever was entered into between the state and the respondent, but that his right to purchase under the conditions named in the act was simply a privilege which he had a right to exercise only while the law remained in force.

We do not think that the cases cited by respondent in any manner sustain his contention. *Fletcher v. Peck*, 6 Cranch, 87, is a long and exceedingly interesting case. It is true that the court there decided that when a law is in its nature a contract, when absolute rights have vested in that contract, a repeal of the law cannot divest those rights. This doctrine, we take it, will not be disputed anywhere. But in that case there was an actual grant of lands made by the legislature. The court stated that the lands in controversy vested absolutely in the grantees; that the grant, when issued, conveyed an estate in fee simple to the grantee, clothed with all the solemnities which the law can bestow. The court also held that the grant in that case was a contract executed, and that the fact that the legislature which had passed the prior act had been stimulated to do so by and through corrupt means, would not justify a subsequent legislature in destroying vested rights which had grown up under the prior law and which involved innocent purchasers. There is nothing in that case, we think, that in any way sustains the contention of respondent.

In *New Orleans Waterworks Co. v. Rivers*, 115 U. S. 674 (6 Sup. Ct. 273), it was decided that a legislative grant of an exclusive right to supply water to a municipality and its inhabitants through pipes and mains laid in the public streets, and upon the condition of the performance of the service by the grantee, is a grant of a franchise and vests in the state in consideration of the performance of a public service, *and after performance by the grantee* is a contract protected by the constitution of the United States against state legislation to impair it. It will be seen that this was an executed contract, and that the decision was based upon the fact that the grantee had performed his part of the contract. *St. Tammany Water Works v. New Orleans Water Works*, 120 U. S. 64 (7 Sup. Ct. 405), is the same kind of a case, and the decision is based upon the principle announced in *New Orleans Water Works Co. v. Rivers, supra.*

*People v. Board of State Auditors*, 9 Mich. 326, was where, under an act to encourage the manufacture of salt in the State of Michigan, approved February 15, 1859, a bounty of ten cents per barrel had been offered to manufacturers, and afterwards, viz., on March 15, 1861, the law had been changed. It was held, on application for mandamus, that the manufacturers were entitled to the bounty on a certain number of barrels of salt which had been manufactured before the passage of the act of March 15, 1861. We hardly see how the law could have been construed in any other way, the only defense to the action being that the claim had not been presented until after the enactment of the new law.

*Montgomery v. Kasson*, 16 Cal. 189, is a case brought under the grant of swamp lands. The court there held that the grant was a grant upon condition precedent. The grant was to certain individuals on condition of certain drainage ditches and canals being constructed; but the case specially recites that the said grantees have, pursuant

to said act, commenced the construction of said canals provided for by the said act.

"It is a contract," says the court, "by which the state grants certain lands upon condition of work to be performed, the grant to take effect when the work is done. It is a contract by which valuable rights may be acquired absolutely, upon the performance of the acts specified as the consideration moving to the state. The grantees, as appears from the evidence in the record, and as found by the referee, entered upon the performance of those acts in the fall of 1857; they then employed an engineer, and surveyed the line of the proposed canals; and in February following commenced the work of excavating one of the canals, and continued the same, without cessation, until June, 1858. They thus brought themselves within the terms of the first section, providing for the commencement of 'the canals, or some one of them,' within one year after the passage of the act."

Under this statement of facts the court holds that by part performance of the contract the grantees had acquired rights with which the legislature could not interfere by subsequent enactment.

But the case at bar is altogether different. The respondent has done nothing. It is true that he has remained in possession of the lands and of the improvements, but he was in possession at the time of the passage of the law. He has made no application to purchase the lands. He has made no payments. It is not even known by the state that he desires to avail himself of the privilege which he had under the law of March 26, 1890, to purchase. He has entered into no contract with the state, and could not be bound to the performance of any contract. He has made no agreement to bind himself or to do anything whatever in the premises. No action for specific performance would lie against him. There is no mutuality whatever, and no other element of a contract between the respondent and the state. The ordinarily accepted defini-

tion of a contract is an agreement between two or more parties to do or not to do a particular thing. This case does not fall within this or any other definition of a contract.

It would be unfortunate indeed if the tide lands of the state were to be tied up awaiting, for an indefinite time, the movement of a class of persons who, under the first law that was passed in relation to them, were privileged to purchase them under conditions expressed, and that the state should not be allowed to change the conditions of its proposals at any time before the proposals were accepted by those in whose interest the law was enacted. Such a theory has never been sustained by the law in relation to lands of any character. On the contrary, it has been held in *Frisbie v. Whitney*, 9 Wall. 187, that occupation and improvement on the public lands with a view to preëmption do not confer a vested right in the lands so occupied; and such a vested right under the preëmption laws is only obtained when the purchase money has been paid and the receipt of the proper land officer given to the purchaser; that until this is done it is within the legal and constitutional competency of congress to withdraw the land from entry or sale, though this may defeat the imperfect right of the settler. And, adopting the opinions of Attorneys General CUSHING and BATES, the court says:

"Persons who go upon the public land with a view to cultivate now and to purchase hereafter possess no rights against the United States, except such as the acts of congress confer; and these acts do not confer on the preemptor, *in posse*, any right or claim to be treated as the present proprietor of the land, in relation to the government. . . . A mere entry upon land, with continued occupancy and improvement thereof, gives no vested interest in it. It may, however, give, under our national land system, a privilege of preëmption. But this is only a privilege conferred on the settler to purchase land in pref-

erence to others.  His settlement protects him from intrusion or purchase by others, but confers no right against the government.''

This, we think, is plainly analogous to the laws governing the sale of tide lands.  A privilege was conferred upon the respondent by the law of March 26, 1890.  That privilege was accorded him in preference to others to purchase the tide lands, and he would have been protected under the laws then in force against the intrusion or purchase by any other person, but no right was conferred upon him against the state.  The case of *Frisbie v. Whitney*, *supra*, goes very far beyond the necessary holding in this case to reverse the judgment, for there it appears that something had been done by the applicant.  The court says:

''The argument is urged with much zeal that, because complainant did all that was in the power of any one to do towards perfecting his claim, he should not be held responsible for what could not be done.  To this we reply, as we did in the case of *Rector v. Ashley*, 6 Wall. 142, that the rights of a claimant are to be measured by the acts of congress, and not by what he may or may not be able to do, and if a sound construction of these acts shows that he had acquired no vested interest in the land, then, as his rights are created by the statutes, they must be governed by their provisions, whether they be hard or lenient.''

The same doctrine obtains in *Hutchings v. Low*, 15 Wall. 77.  There it was held that a party, by mere settlement upon lands of the United states, with a declared intention to obtain a title to the same under the preëmption laws, does not thereby acquire such a vested interest in the premises as to deprive congress of the power to devise it by a grant to another party.  That the power of regulation and disposition over the lands of the United States conferred upon congress by the constitution only ceases under the preëmption laws when all the preliminary acts prescribed by those laws for the acquisition of the title, including

payment of the price of the land, have been performed by the settler. That the legislation thus adopted for the benefit of settlers was not intended to deprive congress of the power to make any other disposition of the lands before they are offered for sale, or to appropriate them to any public use.

In *Campbell v. Wade*, 132 U. S. 34 (10 Sup. Ct. 9), it was held that the statutes of the State of Texas, providing for the sale of a portion of the vacant and unappropriated public lands of the state, did not appear to confer upon a person making application under them for a survey of a part of said lands and paying the fees for filing and recording the same a vested interest in such lands which could not be impaired by the subsequent withdrawal of them from sale under the provisions of the later statutes; and the doctrine of *Frisbie v. Whitney* and *Hutchings v. Low* was reaffirmed.

It seems to us that, under all authority, as well as on principles of sound public policy, it must be decided that the respondent obtained no vested rights under the act of March 26, 1890, and that the act of March 9, 1893, should not be construed as an impairment of any contract between the state and the parties who are privileged to purchase under the provisions of the act.

All the other questions raised in the brief are decided against the contention of respondent. The judgment will, therefore, be reversed and the cause remanded to the lower court with instructions to sustain appellant's demurrer to respondent's complaint.

ANDERS, STILES, HOYT and SCOTT, JJ., concur.