### McGILVRA et al. v. ROSS, State Land Com'r, et al.

### BRESSLER v. SAME.

(Circuit Court, W. D. Washington, N. D.   September 9, 1907.)

#### Nos. 1,545, 1,547.

1. "NAVIGABLE WATERS"—WHAT CONSTITUTES.

Though by the English common law "navigable waters" are tidal waters only, in the United States those waters are navigable in contemplation of law which are navigable in fact.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 5–16.

For other definitions, see Words and Phrases, vol. 5, pp. 4675–4684; vol. 8, p. 7728.]

2. SAME—SHORES AND BEDS OF TIDAL WATERS—OWNERSHIP.

Under the English common law, the crown owns the shores and beds of all tidal waters, and in the United States the states through their sovereignty take like ownership, at least in the absence of any prior disposition made by Congress before their admission into the Union. In both countries the littoral owner may be deprived of access to navigable waters, and the opportunity to reach them may be cut off by the assertion of this sovereign right.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 239–252.]

3. SAME—FRESH WATER LAKES AND STREAMS.

States may assert the same ownership to the beds and shores of navigable fresh water lakes and streams as they may properly assert to the beds and shores of tidal waters.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 239–252.]

4. SAME—WASHINGTON TIDEWATER LANDS, ETC.—OWNERSHIP.

Pursuant to an express assertion of ownership, by Const. Wash. art. 17, the state of Washington owns the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in tidal waters, and up to and including the line of ordinary high water within the banks of navigable rivers and lakes.

5. SAME.

Owners of land abutting upon inland navigable bodies of fresh water in Washington, though holding by patents from the United States antedating the admission of the state, do not and never did own the land below ordinary high water, since the Oregon country, of which the state of Washington is a part, came within the rule that the general government holds the title to such lands in trust for the future states to be created

out of territory acquired by it, at least in the absence of prior disposition by Congress during the territorial condition.

Charles K. Jenner (William Martin, of counsel), for complainants.

John D. Atkinson, Atty. Gen., and E. C. MacDonald, Asst. Atty. Gen. (John W. Roberts, of counsel), for defendants.

WHITSON, District Judge. These suits have been argued together. Lakes Washington and Union are inland, navigable bodies of fresh water, and the complainants are owners of abutting lands. They hold by patents from the United States which antedate the admission of Washington, and they contend that by virtue of those patents they are the owners of shore lands now claimed, and soon to be offered for sale by the state. It is to enjoin the proceedings looking to the sale, and the threatened sale thereunder, that they seek injunctions to protect them in the full enjoyment of the lands to which they claim title; and it is alleged that their boundaries extend to and include "the ownership of those portions" of said lakes "immediately in front of the respective tracts described, out into said lakes to the deep waters thereof." The bills are necessarily of considerable length, but the allegations need not be recited; it may, however, be remarked that matters are set forth, which, if sufficient in law, present causes of equitable cognizance.

Objection is made by demurrer to the jurisdiction of the court, and to the bills for want of equity. While jurisdiction is always of the first importance, yet it being clear that matters are presented which are proper for the consideration of this court, the reasons will not be assigned in view of the conclusions upon the other branch of the case. The following propositions have been so often decided by the Supreme Court that there seems no ground left for discussion: (1) By the English common law navigable waters are tidal waters only. (2) With us the rule has been extended until it may be considered as settled that those waters are navigable in contemplation of law which are navigable in fact. (3) In England by the common law the crown is the owner of the shores and beds of all tidal waters, and here, the states by virtue of their sovereignty, take like ownership, at least in the absence of any prior disposition made by Congress before their admission into the Union. Here, as there, the littoral owner may be deprived of access to those waters which are navigable, and the opportunity to reach them may be cut off by the assertion of this sovereign right. (4) The rule of navigability having been extended to fresh water lakes and streams in this country, the ownership, by analogy, follows the rule, so that the states are entitled to assert the same ownership to the beds and shores of navigable fresh water lakes and streams as they may properly assert to the beds and shores of tidal waters. Martin v. Waddell, 16 Pet. 367, 10 L. Ed. 997; Pollard v. Kibbe, 14 Pet. 353, 10 L. Ed. 490; The Genesee Chief v. Fitzhugh, 12 How. 443, 154, 13 L. Ed. 1058; Den v. Jersey Company, 15 How. 426, 14 L. Ed. 757; The Daniel Ball, 10 Wall. 557, 560, 19 L. Ed. 999; Barney v. Keokuk, 94 U. S. 325, 336, 24 L. Ed. 224; Packer v. Bird, 137 U. S. 667, 11 Sup. Ct. 210, 34 L. Ed. 819; Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Shively v. Bowlby,

152 U. S. 1, 11, 14 Sup. Ct. 548, 38 L. Ed. 331; Mann v. Tacoma Land Co., 153 U. S. 273, 14 Sup. Ct. 820, 38 L. Ed. 714; Baer v. Moran Brothers Company, 153 U. S. 287, 14 Sup. Ct. 823, 38 L. Ed. 718; Water Power Company v. Water Commissioners, 168 U. S. 349, 361, 18 Sup. Ct. 157, 42 L. Ed. 497; The Robert W. Parsons, 191 U. S. 17, 25, 24 Sup. Ct. 8, 48 L. Ed. 73.

As late as May of the present year, in Kansas v. Colorado, 206 U. S. 46, 27 Sup. Ct. 655, 51 L. Ed. 956, in discussing the proprietorship of the beds and shores of such waters, this language from Barney v. Keokuk, supra, was quoted with approval: ·

"It properly belongs to the states by their inherent sovereignty and the United States has wisely abstained from extending (if it could extend) its survey and grants beyond the limits of high water."

The court also quoted from Hardin v. Jordan, supra, as follows:

"Such title being in the state the lands are subject to state regulation and control, under the condition, however, of not interfering with the regulations which may be made by Congress in regard to public navigation and commerce. * * * This right of the states to regulate and control the shores of tide waters, and the lands under them, is the same as that which is exercised by the crown in England. In this country the same rule has been extended to our great navigable lakes, which are treated as inland seas; and also, in some of the states, to navigable rivers, as the Mississippi, the Missouri, the Ohio, and, in Pennsylvania, to all the permanent rivers of the state; but it depends on the law of each state to what waters and to what extent this prerogative of the state over the lands under water shall be exercised."

After citing with approval the numerous cases which have received its attention from time to time, and which have been referred to in argument here, speaking of state control, the court concludes as follows:

"It may determine for itself whether the common-law rule in respect to riparian rights or that doctrine which obtains in the arid regions of the West of the appropriation of waters for the purposes of irrigation shall control, and Congress cannot enforce either rule upon any state."

This state has asserted, by article 17 of its Constitution, the ownership of "the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes." The Legislature in pursuance of and in recognition of state ownership has provided for the control and sale of such lands, and the question has been repeatedly before the Supreme Court of the state, which has affirmed and reaffirmed the state ownership until it can no longer be doubted that a fixed rule of property has become firmly established. Eisenbach v. Hatfield, 2 Wash. St. 236, 26 Pac. 539, 12 L. R. A. 632; Commissioners v. State, 2 Wash. St. 530, 27 Pac. 550; McCue v. Bellingham Bay Water Co., 5 Wash. 156, 31 Pac. 461; Morse v. O'Connell, 7 Wash. 117, 34 Pac. 426; Allen v. Forrest, 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; West Coast Improvement Co. v. Winsor, 8 Wash. 490, 36 Pac. 441; Watkins v. Dorris, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; New Whatcom v. Fairhaven Land Co., 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190; Transportation Co. v. Dalles Portland & Astoria Navigation Co., 27 Wash. 490, 68 Pac. 74; Madson v. Spokane Valley Land & Water Co., 40 Wash. 414, 82 Pac. 718, 6 L. R. A.

(N. S.) 257; Kalez v. Spokane Valley Land & Water Co., 42 Wash. 43, 84 Pac. 395.

Such being the rules applicable to the matter in hand, the conclusion is self-evident that the complainants are not and never were the owners of the land below ordinary high water by virtue of their patents, and that their boundaries do not extend below that line. The rule that the general government holds the title to such lands in trust for the future state to be created out of territory acquired by it, in the absence of any prior disposition by Congress during the territorial condition, has become a doctrine of universal acknowledgment. The argument that the Oregon country, of which this state is a part, came in upon a different basis does not have the sanction of the Supreme Court. On the contrary, in Shively v. Bowlby, supra, involving the title to a donation claim which was a part of that acquisition, the rule was reaffirmed. If any ground ever existed on principle for the theory which counsel have propounded, it has been settled by that case contrary to their contention. The expectations raised by the suggestion that a question was to be presented which has not heretofore received the attention of any court have not been realized. Counsel has with much ability differentiated and distinguished, and has in part taken direct issue with the Supreme Court as to the soundness of the views expressed by it, a privilege which as to the latter at least this court is not permitted to indulge. It has been argued that many of the announcements of that court are dicta, but if it be borne in mind that its discussions were in view of the rules prevailing in the states in which the cases originated rather than to the announcement of a doctrine of its own, it will appear that the expressions which counsel criticise are not dicta, but were made in passing upon questions which were squarely before the court, and in pursuance of its oft-repeated rule of construction, that the control of water and water rights, and those lands so intimately connected with the water as to be hardly distinguishable from it are matters with which the general government, aside from its control of navigation and commerce, has no concern.

As the bills fully disclose the extent of the complainants' claims to relief, it results that the demurrers must be sustained, and the suits dismissed for want of equity.