[No. 10392. *En Banc.* October 22, 1912.]

## J. P. M. RICHARDS, *Plaintiff*, v. CHARLES B. BUSSELL *et al.*, *Defendants*.[1]

PUBLIC LANDS—STATE TIDE LANDS—FILLS—CONTRACTS—LIEN—
ACTUAL COST OF FILL—SUBCONTRACTOR'S PROFITS. Where a contractor for filling. state tide lands under a contract limiting the cost to 16 cents per cubic yard, in good faith sublet the work to a dredging company at 15 cents per yard and expended 1 cent per yard in supervision and engineering, the "actual cost" to him, within Rem. & Bal. Code, § 8103, giving a lien for the actual cost of the fill, is 16 cents per cubic yard, without deducting the subcontractor's profit of 3 cents per cubic yard.

SAME—EVIDENCE OF COST—PRESUMPTIONS. The certificate of the commissioner of·public lands, given pursuant to Rem. & Bal. Code, § 8103, requiring him to determine the actual cost of filling state tide lands under a state contract, is presumptive evidence of the cost.

SAME—TIDE LAND FILLS—LIENS—FORECLOSURE—ATTORNEY'S FEES. Rem. & Bal. Code, § 8103, authorizing the foreclosure of liens for the cost of filling state tide lands "in the manner provided by law for the foreclosure of liens on real estate," does not authorize the allowance of any attorney's fee other than the $10 statutory costs.

SAME—CONTRACTS FOR FILLS—LIEN—ISSUANCE OF CERTIFICATES—
—TIME FOR. Where two contracts for filling contiguous tide lands were entered into at the same time, with the view of excavating one general system of waterways, there being two connecting waterways, the commissioner's certificates showing the amount of the liens by reason of the completion of one of the waterways under the first contract, against certain lots covered in the second contract, but which were nearer to and deriving their benefit from the completed canal under the first contract, are not prematurely issued, although the other waterway was not completed; since the two contracts were in substance one.

[1]Reported in 127 Pac. 198.

EVIDENCE—DOCUMENTARY EVIDENCE—ASSIGNMENTS. The original assignments of tide land contracts, executed in due form and acknowledged before a notary, are competent proof of the fact of the assignments; even if they were recorded without any authority of law.

PUBLIC LANDS—TIDE LANDS—FILLS—COST OF FILL IN STREETS. Where a contract for filling unplatted tide lands, under Rem. & Bal. Code, § 8103, limited the cost to 16 cents per cubic yard, and subsequently the lands were platted, the cost of the fill in streets and alleys is to be added and charged to the abutting lands.

SAME—TIDE LAND FILLS—LIENS—COST OF WORK—CONTRACTS—PROFIT—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 8103, providing for liens in favor of the contractor filling in state tide lands for the actual cost of the work and fifteen per cent additional, provided that the lien shall not be operative for an amount exceeding the cost of the work, stated in the contract, the "cost of the work" includes the actual cost to the contractor and the added fifteen per cent allowed as his profit; hence in a contract limiting the "cost" of the fill to sixteen cents per cubic yard, it is proper, when the work actually cost the contractor 16 cents, to allow his lien therefor and 15 per cent additional.

SAME—LIENS—INTEREST ON INSTALLMENTS OF INTEREST. In an action to foreclose the lien for filling state tide lands under Rem. & Bal. Code, § 8103, providing that the amount due a contractor on certificates for filling the same shall be payable in installments, with interest from the time of the issuance of the certificate, interest is properly allowed on installments of interest past due and unpaid.

Cross-appeals from a judgment of the superior court for King county, Dykeman, J., entered January 24, 1912, upon finding the amount due on tide land certificates, in an action to foreclose liens therefor. Reversed on plaintiff's appeal.

*Will G. Graves, Bausman & Kelleher,* and *Graves, Kizer & Graves,* for plaintiff.

*Harold Preston* and *George E. de Steiguer,* for defendants.

PARKER, J.—This is an action to foreclose a number of liens upon certain tide land lots in Seattle, evidenced by certificates issued by the commissioner of public lands of the state of Washington under the provisions of the act of 1893 relating to the excavation of waterways and filling of tide

lands by private contract. A decree of foreclosure was rendered in favor of the plaintiff, but for less amounts than were evidenced by the certificates, and claimed by him. Both the plaintiff and the defendants have appealed; so to avoid confusion we will hereafter refer to them as such.

On October 27, 1894, under the authority of the Laws of 1893, p. 241 (Rem. & Bal. Code, §§ 8100-8109), the state of Washington, by its commissioner of public lands, entered into two contracts with Eugene Semple, by the terms of which he was to excavate waterways through certain lands situated within and adjacent to the corporate boundaries of the city of Seattle and, with the material taken from the waterways, fill and raise above high tide tide lands adjacent thereto then belonging to the state, and thereby become entitled to liens upon such filled in tide lands, for the amount of the cost of the filling of the same with fifteen per cent additional thereon, as provided by the act. Soon thereafter, and before doing any work thereunder, Eugene Semple duly assigned his interest in the contracts to the Seattle and Lake Washington Waterway Company, a domestic corporation. We will hereafter refer to this company as the Waterway Company. These assignments were assented to by the state, and thereby the Waterway Company succeeded to all the obligations and rights of Eugene Semple.

In the fall of 1907, the Waterway Company having caused to be completed certain portions of the excavation of the waterways and filling of the lands, the commissioner of public lands issued to it certificates reciting the completion of such parts of the work, describing the tide lands so filled in by lot and block numbers according to the official plat of Seattle tide lands, and stating in the certificates the amount of the cost of the filling in and raising above high tide of each of such lots separately, which amounts, with fifteen per cent additional thereon, were certified by the commissioner to be the amounts of the liens the Waterway Company was entitled to upon each of the lots respectively, under the con-

tracts and the law in pursuance of which they were entered
into. A number of these certificates, issued in September
and October, 1907, form the basis of the plaintiff's several
causes of action in this foreclosure. The certificates were
duly recorded in the office of the auditor of King county,
and thereafter by mesne assignments became the property
of this plaintiff. After entering into the contracts for the
excavation of the waterways and filling of the tide lands, and
before the completion of the work upon which these certifi-
cates were issued, the state contracted for the sale of the tide
land lots here involved to the predecessors in interest of the
defendants, and thereafter in February, 1906, by deed con-
veyed the lands here involved, by lot and block numbers ac-
cording to the official plat of tide lands of Seattle, subject
however to liens which might accrue under these contracts
for the excavation of the waterways and the filling of the
lots. The contracts for the excavation and filling did not
in terms fix the amount of the cost of the work, but pro-
vided that,

"The entire cost of said work herein provided for, includ-
ing the cost of bulkhead and seawalls, shall not exceed six-
teen cents per cubic yard for each and every yard of earth
put upon each tract or parcel of land to which any person
or corporation has a pre-emption right of purchase, except
as herein otherwise provided."

By the terms of the contracts, this limit of the cost of
the work might be exceeded by the increased cost of bulk-
heads and retaining walls caused by such modifications of
the plans and specifications therefor as might be deemed
necessary to be made during the progress of the work, which
modifications the commissioner of public lands was by the
terms of the contract authorized to make, and "cause such
increased expense to be estimated and with the approval of
the Governor shall specify the sum in addition to said sixteen
cents per cubic yard to which the entire cost of such work
shall be limited."

After entering into the contracts, and before contracting to sell the tide lands and before the portion of the work here involved was done, the state platted the tide lands into streets, lots and blocks, and thereafter both the streets and the lots were filled under the contracts. Upon the completion of the portion of the work affecting the lots here involved, as decided by the commissioner of public lands, he determined the cost of such work to be sixteen cents per cubic yard for the filling of the lots and streets, to which he added an allowance for extra cost for bulkheads, all of which he apportioned and charged to the several lots here involved as the actual cost of the work. These several charges, so apportioned, with the fifteen per cent additional allowed by law, the commissioner certified as the amounts of the liens the Waterway Company was entitled to upon the several lots under the law and the contracts. By its decree of foreclosure, the trial court found the cost of the work to be thirteen cents per cubic yard instead of sixteen cents, as certified by the commissioner; and awarded foreclosure accordingly, allowing all other charges as determined and certified by the commissioner. Other facts will be noticed as may become necessary in our discussion of the several questions presented.

It will be convenient to first have before us the provisions of the act of 1893 relating to the excavation of waterways and tide lands by private contract. Those provisions requiring our notice, referring to them by the section numbers of Rem. & Bal. Code, are the following:

"Section 8100. The commissioner of public lands of the state of Washington may, when in his judgment the interests of commerce would be subserved thereby, enter into contract with any person or persons, or incorporated companies doing business in the state of Washington, for the excavation of any waterway or waterways through any lands belonging to the state of Washington, or to any citizen or corporation of said state, and for the filling in and raising above high tide of any tide or shore lands belonging to the state of Washington, and upon the completion of such contract such

person or persons or incorporated company shall become en-
titled to and shall have a lien, as in this chapter provided,
upon all tide and shore lands belonging to the state of Wash-
ington, adjacent to such waterway, and remaining unsold at
the date of the approval of this act, that they may fill in and
raise above high tide, and all purchasers of said tide and
shore lands from the state of Washington shall take the same
subject to said lien."

"Section 8103.    Upon the completion of the work  pro-
vided for by said contract, or any part thereof, capable of
separate use for the purposes of navigation, according to
the terms and conditions of said contract, and within the time
provided therein, or such further extension of time as may
have been granted by virtue of the preceding section, the
commissioner of public lands shall issue his certificate to the
contracting parties, or their assigns, showing the actual cost
of the filling in and raising above high tide of all tide and
shore lands so filled in and raised above high tide by such
completion of said work, or such separate portion thereof,
and specifying and describing, with reasonable  certainty,
the lands so filled in and raised above high tide.    Upon the
filing in the office of the county auditor of the county or
counties in which such lands are situated, of such certificate
of the commissioner of public lands, said contracting parties
shall acquire a lien, and the same shall thereupon attach, for
the amount specified in such certificate, with fifteen per cent
additional thereon, and with interest on such amount  and
additional percentage from the date of such certificate at the
rate of eight per cent per annum until payment:    Provided,
however, that such liens shall not be operative for an amount
exceeding the cost of the work as stated in the contract, . . .
The amount due on such lien, or any  proportionate  part
thereof separately payable as above provided, shall be pay-
able by any owner of said lands, or any part thereof separ-
ately owned, as the case may be, other than the state, in ten
equal annual installments, the first installment at the end of
the first year after the sale of such lands, or of such separate
portion thereof, by the state; and the  remaining  install-
ments, one at the end of each year thereafter, with accom-
panying interest on each of such installments, as hereinbefore
provided, to the time of the payment thereof, and such lien

may be foreclosed in the manner provided by law for the fore-closure of other liens on real estate."

"Section 8107. In ascertaining the cost of filling in and raising above high tide of any tide or shore lands, the cost of all bulkheads, and other restraining works, and the cost of filling in and raising above high tide of all streets, alleys and public squares or places, shall be apportioned to the lands benefited thereby, in addition to the cost of filling in such lands."

The principal contention made by counsel for plaintiff is that the trial court erred in its refusal to award him fore-closure for the full amount evidenced by the certificates of the commissioner of public lands, and in deciding that the cost of the work was only thirteen cents per cubic yard in-stead of sixteen cents, as determined and certified by the com-missioner. After procuring the contracts for the excavation of the waterways and filling of the tide lands, the Waterway Company entered into a contract with the Seattle General Contract Company by which that company became interested with the Waterway Company in the contracts. Thereafter the Seattle General Contract Company in November, 1903, entered into a contract with the Puget Sound Bridge and Dredging Company, whereby that company agreed to per-form certain unfinished portions of the work at an agreed price of fifteen cents per cubic yard, which contract was ap-proved by the Waterway Company. For present purposes, we may regard this contract as being between the Waterway Company and the Dredging Company. Thereafter the Dredging Company did the excavating and filling here in-volved. The evidence, we think, establishes the fact that by this arrangement the actual excavation and filling cost the Waterway Company—or, we might say, the Waterway Com-pany and the Seattle General Contract Company, its associ-ate, which for our present purpose amounts to the same thing —fifteen cents per cubic yard; and that other work necessary to a compliance with the contracts with the state, such as supervision, engineering, etc., cost the Waterway Company

an amount equal to one cent per cubic yard for all of the ma-
terial handled in the excavation and filling, thus resulting in
the actual cost of the work to the Waterway Company being
the maximum of sixteen cents per cubic yard specified in the
contracts, aside from extra cost allowed for bulkheads. Mr.
Hedges, the president and manager of the Dredging Com-
pany, testified that the excavation and filling done by that
company cost it twelve cents per cubic yard, leaving it a
profit of three cents per cubic yard under its contract with
the Waterway Company and its associate for doing the work.
Upon this evidence of the actual cost of the excavating and
filling to the Dredging Company, the trial court rested its
determination of the amount of the respective liens, as they
should have been evidenced by the certificates of the commis-
sioner of public lands. The trial court did not make formal
findings upon this or any other question of fact; but at the
conclusion of the trial, the grounds of its decision was indi-
cated by remarks of the judge as follows:

"I do not believe that the commissioner of public lands had
any knowledge that this work was done for less than the price
specified in the contract, until he heard Mr. Hedges' testi-
mony here, but it is undisputed that this work was done for
less than the commissioner presumed it was being done for.
There can be no question but what the work was done, as said
by Mr. Hedges, for twelve cents a yard, and conceding the
additional one cent a yard, the difference between those two
contracts, and adding that to what it cost the Bridge Com-
pany to do the work, would make thirteen cents a yard, and
if this court is correct in its theory of the case, that is the
extent of the burden which should be imposed upon this prop-
erty, and that will be my judgment in this case. I am not
going to set aside any of these certificates. I will simply
reduce them to that amount."

The contention of counsel for the defendants upon the
trial, as it is here, was in substance that the allowance by the
commissioner of public lands of the maximum of sixteen cents
per cubic yard as the cost of the work when the actual cost
of the excavating and filling was only twelve cents per cubic

yard to the Dredging Company, was such an erroneous determination of the question of the cost by the commissioner as to amount to a fraud in law upon the rights of the defendants. The trial court seemingly followed this contention only so far as to hold that the commissioner's determination of the cost of the work was only *prima facie* correct, and that that question became little else than a question for original investigation in the superior court upon foreclosure of the certificates, with the burden of proof to overcome the statement of the costs made in the certificates upon the defendants. This court has heretofore had occasion to express its views upon the force and effect of certificates of this nature issued by the commissioner of public lands. In *Seattle & Lake Washington Waterway Co. v. Seattle Dock Co.*, 35 Wash. 503, 77 Pac. 845, a case involving the foreclosure of certificates issued under these same contracts, the court, at page 512, said:

"In this case, it is conceded that the state was the owner of all the tide lands in controversy at the time the act was passed, and at the time the contract to fill the same was entered into. This being true, the state could enter into any kind of a contract for filling the lands, at any price, and upon any terms. It could also designate some officer to accept the work, when such officer should deem it completed according to the contract. It could afterwards sell the land, and the purchaser would take subject to all the terms and conditions of the contract, and this is what the state did. At the time the act was passed and the waterway contract entered into, the state was the sole and exclusive owner of the lands. Appellant had no interest in any of them. Appellant's grantors had only a preference right to purchase. They had no vested or other interest. *Allen v. Forrest*, 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Mississippi Valley Trust Co. v. Hofius*, 20 Wash. 272, 55 Pac. 54. They were, therefore, entitled to no notice except such as is provided by the act or the contract. When they purchased the land from the state, they took with notice of the contract, and all the terms and conditions thereof. The commissioner of public lands is made the judge of when the contractor is entitled to a certificate, and,

in the absence of fraud, his decision is conclusive upon the appellant, as it would be upon the state if the state were still the owner. *Scholpp v. Forrest*, 11 Wash. 640, 40 Pac. 133."

In *Bussell v. Ross*, 60 Wash. 344, 353, 111 Pac. 165, and 64 Wash. 418, 421, 116 Pac. 1088, this view of the finality of the commissioner's certificates was again expressed. However, passing the question of the conclusiveness of the commissioner's certificates as to the cost of the work, it appears from the evidence in this case that the filling of the tide lands actually cost the Waterway Company and its associate the maximum of sixteen cents per cubic yard. That is, these companies paid the Dredging Company fifteen cents per cubic yard and incurred an expense in addition thereto amounting to one cent per yard in superintendence, engineering, etc. It has been suggested that there was no proof in the record showing the incurring of this extra one cent per yard expense by the Waterway Company. The answer to this suggestion is that there is no proof to the contrary, and the presumption in favor of the commissioner's certificates furnishes sufficient support for the conclusion, the burden of showing to the contrary being upon the defendants, even assuming that the trial court's view that that became an issuable fact in the foreclosure case aside from the question of fraud. We also think that the evidence warrants the conclusion that the contract by which the Dredging Company was to do the work for fifteen cents per cubic yard was entered into in good faith on the part of the Waterway Company and its associate, and that there was no collusive understanding with the Dredging Company by which it was to share any of its profits with the Waterway Company or its associate. We do not find in the record any expression of the trial court intimating a different view than this upon this question; its decision apparently being rested entirely upon the theory that the cost of the work to the Dredging Company, twelve cents per cubic yard, and the one cent per cubic yard incurred by the Waterway Company for superintend-

ence, engineering, etc., aggregating thirteen cents per cubic yard, was the correct measure of the cost of the work which should have been certified by the commissioner of public lands under the provisions of Rem. & Bal. Code, § 8103, above quoted. In other words, the trial court was apparently of the opinion that the actual cost of the work to the Waterway Company, though incurred in good faith, was not controlling upon that question. Now if the contract of the Waterway Company and the Seattle General Contract Company with the Dredging Company for the doing of the work had been shown to be collusive, resulting in the Waterway Company or its associate sharing in whatever profit the Dredging Company might make under its contract, there would be some reason for taking into consideration the cost of the work to the Dredging Company in determining the cost of the work to be certified by the commissioner of public lands. But in view of the good faith of the Waterway Company and its associate in entering into the contract with the Dredging Company to do the work for fifteen cents per yard, we are unable to see why the actual cost of the work to the Waterway Company and its associate is not the actual cost of the work contemplated by law to be certified as such by the commissioner. The state and its successors in interest, the purchaser of the land, might have grounds to complain if it were shown that the Waterway Company had entered into some collusive arrangements by which it was to share in the profits of its subcontractor, or share in the profits of some one furnishing supplies incident to the doing of the work, or had purposely performed the work or caused it to be performed in such manner as to cost it materially more than was necessary for it to expend therefor, or had by any subterfuge sought to make the cost to it of doing the work appear to be more than it actually expended therefor. But we do not think that the state, or its purchaser of the tide lands, has any further interest in the cost of the work. A reading of all of the evidence convinces us that there was no collusive

contract with the Dredging Company shown, nor does it appear that the Waterway Company could have done the work or caused it to be done for less than 15 cents per cubic yard that it and its associate paid the Dredging Company therefor, together with the one cent per yard necessarily incurred for superintendence, engineering, etc. The mere fact that the Dredging Company made a profit of three cents per yard on its contract does not show that the Waterway Company and its associate profited beyond the 15 per cent allowed them by the law, nor does it show that they could have caused the work to be done for less than this cost to them. Indeed the evidence indicates that the Dredging Company possessed peculiar advantageous facilities for doing the work not possessed by the Waterway Company or its associate, and not possessed by others in this part of the country. We conclude that the commissioner of public lands correctly determined the cost of the work to be sixteen cents per cubic yard, that being the actual cost to the Waterway Company and its associate without any collusion on their part, and that the plaintiff is entitled to a decree foreclosing its liens computed upon that basis, as it was computed and certified by the commissioner of public lands, together with interest thereon as provided by § 8103 above quoted.

Counsel for the plaintiff further contend that the trial court erred in refusing to allow them attorney's fees upon the foreclosure, other than the $10 fee allowed by the general statute. This contention is rested upon language of § 8103 providing that "such lien may be foreclosed in the manner provided by law for the foreclosure of other liens on real estate." It is argued that this language gives the right to attorney's fees upon the foreclosure of these certificates, as in foreclosure of mechanics' and other statutory liens where the statute expressly provides for attorney's fees. We are unable to agree with this contention. It seems to be fully answered by the decision in this court in *Trumble v. Trumble,* 26 Wash. 133, 66 Pac. 124, where there was in-

volved the foreclosure of a lien upon real property created by a decree of divorce to secure an allowance in the nature of alimony.   At page 136, the court said:

"It is next assigned as error that the court allowed respondent a counsel fee of $100.   The original decree provided that the 'lien shall be foreclosed and the property sold as property is sold under foreclosure of mortgage.'   It does not provide that an attorney's fee shall be recoverable as a part of the lien, and there is no agreement of the parties as to attorney's fees.   Section 5165, Bal. Code, provides that the compensation of attorneys shall be left to the agreement of the parties, but there shall be allowed to the prevailing party certain sums by way of indemnity, which are termed 'costs.'   Section 5172 of the same volume designates what those costs shall be.   Section 5165 allows parties to make their own agreements as to attorney's fees, but, in the absence of any agreement, Sec. 5172 regulates the matter. *Potwin v. Blasher*, 9 Wash. 460 (37 Pac. 710).   Since in this case there was neither an agreement concerning attorney's fees, nor a provision in the divorce decree authorizing the enforcement of a lien therefor, we think it was error to include in the decree herein an amount for attorney's fees. This is a suit to foreclose the lien for what the divorce decree created, and no more."

It seems to us that the language of § 8103 here relied upon furnishes no better support to an allowance of attorney's fees upon this foreclosure than does the language of the divorce decree involved in *Trumble v. Trumble*.   This court has recognized and followed the general rule that attorney's fees are not allowable in the nature of costs, in the absence of statute or contract clearly so authorizing, in the following cases:   *Larson v. Winder*, 14 Wash. 647, 45 Pac. 315; *Ditmar v. Ditmar*, 27 Wash. 13, 67 Pac. 353, 91 Am. St. 817; *Legg v. Legg*, 34 Wash. 132, 75 Pac. 130; *Criswell v. Directors School District No. 24*, 34 Wash. 420, 75 Pac. 984; *Spencer v. Commercial Co.*, 36 Wash. 374, 78 Pac. 914; *McGill v. Fuller & Co.*, 45 Wash. 615, 88 Pac. 1038.   We conclude that the trial court was not in error in refusing to

allow attorney's fees other than the $10 fee taxable as costs under the general statute.

Counsel for the defendants contend that the certificates were irregularly and prematurely issued, and that the plaintiff was not entitled to have them foreclosed for any amount. There were, as we have noticed, two contracts between the Waterway Company and the state for the excavation of the waterways and the filling of the tide lands here involved. These contracts are in substance the same, differing only as to the tide lands and portions of the waterways therein described. They were executed on the same day and the commissioner has construed and treated them as one contract in substance. The waterways as described in the contracts are manifestly contemplated as being a single system of waterways, and so far as the particular portions of the waterways here involved are concerned, they may with some degree of reason be regarded as a single waterway, since they form a continuous "U" shaped waterway having its two ends connected with the harbor of Seattle upon the north. The easterly leg of this waterway is designated as the east waterway, and the westerly leg as the west waterway. The tide land lots here involved lie between these waterways and somewhat nearer to the east than to the west waterway. The lands to be filled under these contracts include all of the tide lands lying between these designated waterways and for a considerable distance to the east and west thereof. The line dividing the lands described in the separate contracts runs northerly and southerly through the land lying between these waterways, so that the lots here involved lie partly within the described land of each contract. The platting of the land into lots and blocks by the state, after entering into these contracts, resulting in this dividing line running diagonally through the block in which the lots here involved lie. The contracts are designated as contract No. 1 and contract No. 2. Contract No. 1 describes land lying east of this line, while contract No. 2 describes land lying to the west of it.

The certificates here sought to be foreclosed purport to be issued under contract No. 1, though they describe and are issued against land lying within the description of contract No. 2 as well as No. 1. The east waterway nearer to which all of these lots lie appears to have been sufficiently excavated to warrant the issuing of certificates against all of these lots under the contracts; unless it be held that the certificates should not have been issued against lots and parts of lots falling within the description of contract No. 2, because of the failure of the waterway company to sufficiently excavate the west waterway, that being within the description of contract No. 2, to entitle the Waterway Company to certificates under that contract. While some excavation was done in the west waterway, we may concede, for argument's sake, that no part of the west waterway was sufficiently excavated to become capable of separate use for navigation as was the case with the east waterway.

These facts, it is contended, render the issuance of the certificates, in so far as they are against lots and parts of lots within the description of contract No. 2, irregular and prematurely issued. If these contracts were entirely separate from, and had no relation to, each other, there would be some reason in this contention. But in view of the fact that these contracts were entered into at the same time, with the same person, with the evident view of excavating one general system of waterways, at least so far as the waterways here involved are concerned; that the east and the west waterway are so connected as to form not only one system of waterways, but in a sense one waterway; that the lots here involved are all nearer to the east than the west waterway, and will apparently derive their benefit from the east rather than from the west waterway, so far as the excavation of such waterways will confer benefits upon these lots, we are of the opinion that the certificates were not prematurely issued. We are also of the opinion that the statement in the certificates that they were issued under contract No. 1 is not, under the circum-

stances, such an irregularity as to render them ineffectual as evidencing the liens which the waterway company became entitled to by having completed a portion of the work. The case of *Scholpp v. Forrest*, 11 Wash. 640, 40 Pac. 133, is in harmony with our view that these two contracts are in substance one.

It is contended by counsel for the defendants that there is no lawful proof of the assignments of these certificates showing title in the plaintiff. The original assignments showing transfer of the certificates from the Waterway Company through its assignees to the plaintiff were received in evidence. They appear to be in due form, and are also acknowledged before notaries public in usual form. The assignments were all recorded in the office of the auditor of King county, as the certificates were. The objection seems to be that there is no statute authorizing the recording of such assignments, and that therefore the recorded assignments are not admissible in evidence. The argument seems to proceed upon the theory that these assignments are introduced in evidence as certified copies of the record in the auditor's office, and there being no statute expressly authorizing their recording such record is not legal proof. The trouble with this contention is that these are the original assignments, and we may therefore ignore their recording. They manifestly would be legal proof whether recorded or not. Their recording, even if held to be wholly unauthorized by law, is foreign to the question of their admissibility as original assignments.

It is also contended by counsel for defendants that the trial court erred in apportioning the cost of the street fill against the several lots, thereby resulting in the cost being more than the maximum of 16 cents per cubic yard of the material actually put upon each lot. This contention was decided adversely to defendants in *Bussell v. Ross*, 64 Wash. 418, 116 Pac. 1088.

It is further contended by counsel for defendants that the trial court erred in allowing the plaintiff fifteen per cent additional upon the cost of the work, since such allowance would result in the maximum cost of sixteen cents per yard allowed by the contract being exceeded. Rem. & Bal. Code, § 8103, provides for the issuance of certificates by the commissioner of public lands "showing the actual cost of the filling in and raising above high tide," etc., of the lands, and that the contractor "shall acquire a lien, and the same shall attach for the amount specified in such certificate with fifteen per cent additional thereon and with interest . . . . provided, however, that such lien shall not be operative for an amount exceeding the cost of the work as stated in the contract." This proviso is relied upon as limiting the amount of plaintiff's entire recovery in this case in any event to the sixteen cents per yard specified in the contracts. To give to this proviso the force contended for by counsel for the defendants would have the effect of entirely eliminating from § 8103 the language giving to the Waterway Company fifteen per cent additional upon the cost to it. Now these contracts do not pretend to state the cost of the work, but only the limit of cost which must not be exceeded. The word "cost" as used in this section preceding the proviso, as we have seen, manifestly means cost to the contractor aside from any profit to him. It seems plain that the contractor's fifteen per cent additional upon the cost to him, shall constitute his profits and that he shall have none other. So if the word "cost" as used in the proviso be held to mean the same, then the contractor could have no profit. We think this is not the meaning of the word "cost" as used in the proviso, but that it there means the entire cost of the work, made up of the cost to the contractor and his fifteen per cent additional. Nor do we think that the language of the contract places any different limitation than this upon the amount which the contractor or its assignee may recover upon foreclosure. We conclude that the trial court was not in error in allowing

fifteen per cent additional upon the cost of the work, even though such an allowance may result in plaintiff recovering an amount equal to more than sixteen cents per cubic yard of the material excavated and filled.

It is finally contended by counsel for defendants that the trial court erred in allowing interest upon installments of interest past due and unpaid. This conclusion of the trial court seems to be fully warranted by the decision of this court in *Mississippi Valley Trust Co. v. Hofius*, 20 Wash. 272, 55 Pac. 54, where the court said:

"Nor do we think, under modern authorities, that the third objection can be sustained, viz., that the court erred in allowing interest at seven per cent per annum upon the installment of interest which fell due February 8, 1898. Under the statute, the interest would become a distinct obligation, the time for payment being fixed by the statute. This being true, the money which was due at that date was unpaid, the state had the benefit of it, and the law will allow legal interest as a measure of damages."

Our attention is called to *Cullen v. Whitham*, 33 Wash. 366, 74 Pac. 581, a later decision which it is insisted in effect overrules the holding in the *Mississippi Valley Trust Co.* case. The later case, however, deals with a private contract, and we think is not controlling here, in view of the fact that in the former case the court was dealing with this very statute and giving it a construction which has stood since 1898, and no doubt upon the faith of which construction those interested in these contracts and certificates have relied. It really has become a rule of property as affecting these certificates, and the doctrine *stare decisis* requires that it be not disturbed, even though we might now question its correctness.

We conclude that the plaintiff is entitled to a decree foreclosing the certificates for the full amount certified therein by the commissioner of public lands as the cost of the work, with fifteen per cent additional and interest. The cause is remanded to the trial court with directions to set aside its

decree and enter a decree in accordance with this opinion. The plaintiff will recover costs in this court.

MOUNT, C. J., ELLIS, CROW, GOSE, and MORRIS, JJ., concur.

MAIN, J., took no part.

### ON RECALL OF REMITTITUR.

[*En Banc.*   January 3, 1913.]

PARKER, J.—In this case the Dexter Horton National Bank was made a defendant, because of a mortgage, given to it by Bussell and wife, upon the tide lands here involved to secure indebtedness owing by them to it. By its answer and cross-complaint, the bank sought to foreclose this mortgage, and also sought foreclosure of another mortgage upon other real property, and a pledge of certain personal property given by Bussell and wife to it as additional security for the same indebtedness. The trial court, in its final judgment and decree, awarded judgment in favor of the bank against Bussell and wife for this indebtedness, and decreed foreclosure of the mortgage and pledge of property other than the tide lands involved, as well as decreeing foreclosure of the tide land certificates against the tide lands. The appeals of both Richards and Bussell and wife were taken only from so much of the final judgment and decree as awarded foreclosure of the tide land certificates. In our opinion in this case, we inadvertently omitted mention of these facts, and our direction therein to the superior court might be construed as a direction to set aside the final judgment and decree in so far as it awarded judgment and foreclosure against Bussell and wife in favor of the bank upon property other than the tide lands, as well as that portion thereof awarding foreclosure against the tide lands. We did not intend that our disposition of the cause should be so construed.

The remittitur having been recalled for the purpose of making our decision more certain in this respect, we now direct that the cause be remanded to the trial court with

directions to set aside its final judgment and decree only in so far as it awards foreclosure of the tide land certificates against the tide lands involved, and that there be entered a decree of foreclosure against the tide lands in accordance with the views expressed in our opinion. In so far as the final judgment and decree awards judgment against Bussell and wife in favor of the bank, and foreclosure of the mortgage and pledge given to the bank of property other than the tide lands here involved, the final judgment and decree will remain undisturbed.

MOUNT, C. J., CROW, ELLIS, GOSE, MORRIS, and FULLERTON, JJ., concur.

MAIN, J., took no part.