## GRAND TRUNK RY. CO. OF CANADA v. COBLEIGH.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

RAILROADS—ACCIDENT AT CROSSING—INSTRUCTIONS—DUTY TO LOOK AND LISTEN.

In an action against a railroad company for alleged negligence in running over the plaintiff while crossing its tracks at a highway crossing, the defendant is entitled to have the jury specifically instructed as to the duty of the plaintiff, under such circumstances, to look and listen for a train, before attempting to cross the track, especially when the plaintiff's own testimony suggests that he may have been negligent in this respect; and a general charge that the plaintiff was bound to act as a prudent man would do under the circumstances, leaving it for the jury to fix the standard of prudence, is not sufficient.

In Error to the Circuit Court of the United States for the District of Vermont.

This was an action by Wayne Cobleigh against the Grand Trunk Railway Company of Canada to recover damages for personal injuries. The plaintiff recovered a verdict. A motion for a new trial was denied (75 Fed. 247), and the defendant now brings error to review the judgment against it.

A. A. Strout, R. N. Chamberlin, and C. A. Hight, for plaintiff in error.

Bates & May, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiff entered upon the verdict of a jury.

The action was brought to recover damages for injuries sustained by the plaintiff by the alleged negligence of the defendant. While driving his team over the defendant's tracks where they intersected a public highway in the town of Stratford, N. H., he was struck by one of the defendant's trains. The negligence imputed was the failure of the defendant to sound the whistle and ring the bell upon the locomotive, as required by the statutes of the state. Error is assigned of the refusal of the trial judge to instruct the jury as requested in behalf of the defendant. The assignments of error present the single question whether the rulings of the trial judge in respect to the issue of the plaintiff's contributory negligence were correct.

It appeared upon the trial that the accident took place on a November day, about noon, when there was a snow storm. The general course of the defendant's railroad was substantially north and south, and that of the highway was substantially east and west, the intersection being at practically a right angle. The plaintiff was on his way from the nearest village to his home, which was about four miles beyond the crossing, proceeding westerly, driving a pair of horses harnessed to a farm wagon. Along the highway easterly of the crossing, for a distance of about 1,200 feet, there was an unobstructed view of the railway track to the southerly as far as the station house and beyond. The station house was

about 90 rods southerly from the crossing; and from the crossing to this building, and to a considerable distance southerly beyond, the railroad track ran upon an embankment higher than the adjacent land at either side. As the train which struck the plaintiff approached the semaphore located southerly from the station house, the whistle of the locomotive was blown. The plaintiff testified that when he was about 35 rods easterly from the crossing he heard this whistle; thought it was sounded at the semaphore, and supposed it to be a signal from a train coming from the south; that he knew that there was an express train from the south due at about that time, which did not stop at the station house, but that he gave the matter no thought. He further testified:

"After I heard the whistle, I kept driving along until I got within, I should judge, eight to twelve rods from the track, and I stopped my team to see if I could see the train. I had heard it whistle distinctly. There was quite a bluster of snow coming directly in my face that blinded my view of the train, and I could not see it, and thought it had stopped. I started the team to go. I thought I could have ample time before they could get up steam to get by the tracks. The horses started into a trot. The first thing I knew after I started them, just as they was going to or did strike the track, the off mare threw up her head, and snorted, and I looked, and it looked as though the engine was coming right across into my lap, and I hollered and slapped the horses. They struck me. That is all I knew about it."

A witness for the plaintiff, who was proceeding along the highway in the same direction with the plaintiff, and about 30 rods behind him, testified that he saw the train coming, and when plaintiff was some 15 or 20 rods from the crossing saw the plaintiff's horses were prancing; that he thought plaintiff did not see the train, and would have trouble with his horses. The testimony of other witnesses who were in the vicinity of the crossing at the time tended to show that the snow storm was not such as to obscure appreciably seeing the train a long distance away as it approached. Testimony was given tending to show that the train approached the crossing at a very high rate of speed, and did not give the statutory signals. Upon the question of the plaintiff's contributory negligence the trial judge instructed the jury as follows:

"So you see that, although the railroad company brought this upon him, if he had a share in it, and contributed to it, he was in fault. In that view it becomes necessary to look at what would be a fault on his part. This is to be looked at in view of all the circumstances and in view of the law. He was situated just as he was, and heard the whistle, and the situation was as the evidence has shown it to be, and the law of the state of New Hampshire required that these two long and two short whistles should be given, and the bell be rung all the way. He had a right to rely on that being done. He had a right to expect that the law would be complied with. Now, take it altogether, in view of what he had a right to expect about that, in view of what he could see if he had looked, in view of what he could hear if he had listened, in view of the storm of snow and wind then going on as has been described,—look at the whole thing, and see if he did anything that a prudent man would not have done, or omitted anything that a prudent man would not have omitted, that brought this upon him. You know what a prudent man is. I do not qualify it one way or the other. But being right in his place, as is shown by the evidence; and in view of what he had a right to expect from the train; his knowledge that the railroad was there; the difficulty he had in seeing, bundled up as you think he was, to hinder his hearing; stopping, and doing just exactly what the evidence shows he did,—did he act prudently? If he did, that does not hinder his recovering. If he did not,—if his doing what he

ought not to have done, or failure to do what he ought to have done, brought this upon himself, contributed to what happened,—then he is not entitled to recover; that is, contributed substantially, so that when you look at it you can say that, although the railroad company was in fault, he was too, and his fault helped the fault of the railroad company to bring this upon him."

The defendant requested the following instructions, among others:

"(3) That it was the duty of the plaintiff, after his attention had been called to an approaching train, to look and listen for such train at such distance from the crossing as to enable him to ascertain whether or not he could safely pass over the same without collision. And that, if they find that he did not so look and listen, he would be guilty of such contributory negligence as would prevent his recovery in this action, provided that such want of care contributed to produce the injury."

"(8) That it is not sufficient to enable the plaintiff to recover, if it appears that he stopped at a distance of two hundred feet from the crossing, and being then unable, on account of a snow squall, to see the train which he had heard whistle, started his horses, and drove at a trot onto the track, without again looking for the train. If, under such circumstances, he drove onto the track, and injury ensued, he was guilty of contributory negligence, and cannot recover, even though the jury find that the defendant was also negligent in not giving proper signals for the crossing."

These instructions were refused, and the trial judge declined to instruct the jury in respect to the issue of the contributory negligence of the plaintiff other than as he had already instructed them. The defendant duly excepted to the instructions thus given and refused.

We think the defendant was entitled to the instructions requested. The plaintiff's own testimony suggested, if it did not prove, a strong case of contributory negligence on his part. It would have justified a finding by the jury that he knew that a fast train from the south, which did not usually stop, had signaled its approach to the station; that such a train, being where the signal located it, would reach the crossing about the time he would; that he gave no thought to these circumstances, but proceeded, without paying any attention to them at all, until he reached a place about a dozen rods from the crossing; that he then stopped and looked and listened, but did not hear the train, and, owing to the snow, could not see whether one was coming or not; that he then proceeded, his horses on a trot, without any further attempt to discover whether he could cross the track without danger, until he reached the track, and was struck by the train. The jury would have been authorized to discredit the statement that he stopped at all, or that he made any effort whatever to discover whether he could safely cross, because other testimony indicated that the snow storm was not thick enough to have prevented him from seeing the train if he had looked for it at the point where he says he did; and the jury were not bound to accept his testimony, even though uncontradicted, as to any fact militating against his own prudence. A jury may properly reject any uncorroborated statement of a party to the action, even though there is no controverted testimony. Elwood v. Telegraph Co., 45 N. Y. 549; Dean v. Railway Co., 119 N. Y. 540, 23 N. E. 1054. If he did stop and look and listen, he was not excused from making any further

attempt to discover whether he could safely cross. According to his own testimony, at that time it was unavailing for him to look, because the snow did not permit him to see. If he had looked and listened again, stopping or not, when nearer the crossing, in all probability he could have seen the approaching train. If this is so, his omission to look again was negligence. The law imposed upon him the obligation of both looking and listening, and required him to avail himself of all his faculties for self-protection. The rule of the adjudged cases is almost universally expressed in the proposition that a person about to cross a railroad track, whether upon a public highway or elsewhere, is bound "to listen and to look." As expressed by this court in Railroad Co. v. Blessing's Adm'r, 35 U. S. App. 208, 14 C. C. A. 396, and 67 Fed. 280, the rule is that a person "who is about to cross a railroad track is bound to listen and look in order to avoid danger; and if he fails to do so, or if, doing so, and seeing the danger, he persists in the attempt, he is guilty of negligence that will defeat any recovery if he is injured." He does not relieve himself from the imputation of negligence by looking when he cannot see, and omitting to look again when he could see, and avoid danger. In his instructions the trial judge did not give the jury any definition of contributory negligence beyond the statement that it consisted in the omission to use the care of a prudent man. We think the defendant was entitled to the benefit of a specific instruction defining the rule of contributory negligence applicable to the case of a person about to cross a railway track. In view of the instructions given and those which were refused, the jury were at liberty to adopt their own standard of prudent conduct, and accept one less rigorous than that adopted by the courts. The first of the requests refused presented the general rule which should have been given to the jury for a guide. The second presented a rule specifically applicable to a state of facts which they would have been warranted in finding established by the evidence.

For these reasons we think the judgment should be reversed, and it is ordered accordingly.