relating to proceedings for the discovery and inspection of books, papers, and documents, does in express terms authorize a party to an action to compel his adversary to make discovery not only of documents, but of any "article or property in his possession or under his control," and it is upon this authority that the order appealed from must stand, if at all. This rule was amended in 1896, so as to include the provision above quoted, and, as thus amended, it was doubtless intended to conform to the requirements of section 804 of the Code of Civil Procedure, which provides that "the general rules of practice must prescribe the cases in which a discovery or inspection may be so compelled, and the proceedings for that purpose, where the same are not prescribed in this act." We think, however, that in enlarging the scope of this rule so as to include property other than that specifically mentioned in section 803 the convention of 1895 exceeded its authority. Rules of practice must be consistent with and subordinate to statutory enactments prescribing methods of procedure (Code Civ. Proc. § 17; Rice v. Ehele, 55 N. Y. 518); and giving to rule 15 the construction contended for would, in our judgment, render it inconsistent with section 803 of the Code, which limits the power of the court to compel discovery to the articles mentioned therein, viz. "a book, document or other paper." The language of section 804, which requires that the general rules of practice "must prescribe the cases" in which a discovery may be had, does not, in our opinion, mean that the scope of the statute may be so enlarged by the rules as to embrace any and all property and things owned or possessed by a party, but rather that the "cases" in which a discovery or inspection may be "so" compelled are those prescribed and pointed out in section 803. Any other construction would confer upon the judges whose duty it is to formulate the rules unlimited power to compel the inspection by one party at the instance of the other of every species of property in his possession; and this, it is plain to be seen, would inevitably lead to an intolerable condition of affairs. We conclude, therefore, that the order appealed from should be reversed, and that the plaintiff's motion should be denied.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.

---

(66 App. Div. 46.)

SERGENT v. LIVERPOOL & L. & G. INS. CO.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

1. FIRE INSURANCE—PROOFS OF LOSS—WAIVER—AGENCY—AUTHORITY.

Where a fire policy provided that the company should not be construed to have waived any condition or forfeiture by any act or proceeding relating to appraisal or examination, a statement by an adjuster that it would be unnecessary to write to the company concerning a loss was not a waiver by the company of a provision requiring proofs of loss.

2. SAME—VIOLATION OF CONDITION—NOTICE.

Where an insured building stood on leased ground in direct violation of a provision that the policy should be void in such case, and insured testified that he informed insurer's agent of the fact prior to the time

he became agent, there was no basis for a finding that insurer had notice, in the absence of evidence contradicting the agent's testimony that at the time the insurance was effected he had no recollection of any such information.

Appeal from trial term.

Action by Adelbert G. Sergent against the Liverpool & London & Globe Insurance Company. From a judgment in favor of plaintiff and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Charles D. Thomas, for appellant.

Andrew G. Washbon, for respondent.

PARKER, P. J. This action is to recover upon a policy of insurance issued by the defendant. It is in the form of the usual standard policy, and insures the plaintiff's cheese factory building, and an engine, boiler, and connections, etc., therein. It was issued on May 11, 1892, for the term of one year. The building was totally destroyed by fire on August 23, 1892. The insurance company defends upon several grounds: First, that the building stood upon leased grounds when the insurance was taken, which fact, by the terms of the policy, renders it void; also that the building stood vacant from about June 1, 1892, until the time of the fire, which, for the same reason, rendered the policy void; also that the proofs of loss, which were, by the policy, required to be delivered to the company within 60 days after the fire, were not in fact delivered until 90 days or more thereafter. The action has been three times tried. On the first trial, at the Otsego circuit, the plaintiff recovered a verdict for the amount which the plaintiff claimed was adjusted by himself and one Sheives, who claimed to act as an adjuster for the defendant company. No proof of the value of the property destroyed was given, but the recovery was placed upon the amount as so adjusted. A new trial was granted by the general term upon the sole ground that there was not sufficient evidence to warrant the finding that Sheives had authority to act as adjuster for the defendant. Other objections then taken by the defendant were not there considered. 77 Hun, 612, 28 N. Y. Supp. 1123. On the second trial, the plaintiff was nonsuited substantially on the ground that he had failed to serve the required proofs of loss within 60 days, as required by the policy. On appeal to the general term it was held that a failure to serve such proofs within the specified time was a bar to the plaintiff's recovery, and that, upon an examination of the case, that court could find no evidence from which a jury might find a waiver by the defendant of that requirement. The nonsuit, therefore, was sustained. 85 Hun, 31, 32 N. Y. Supp. 594. On appeal to the court of appeals evidence was discovered in the record, from which, in its opinion, the jury might have found such a waiver; and the judgment below was therefore reversed, and a new trial granted. On the third trial the plaintiff recovered a verdict for the amount so adjusted and interest, and from the judgment entered thereon, and an order

denying a new trial on the minutes, and an order granting an extra allowance of costs, this appeal is taken.

Sheives, with whom the plaintiff claims he adjusted his loss on August 30, 1892, differs from the plaintiff as to what occurred between them on that occasion; but as to what was done and said then the plaintiff's version must be accepted. According to that version, Sheives then and there claimed to act as adjuster for the company. It does not appear, however, from the plaintiff's own statement, that he claimed to be anything more than an adjuster. De Camp, who was shown upon the trial to be the adjusting agent for that territory, testified that he sent Sheives there to estimate the value of the buildings for him, and not to represent the company; and Sheives' letter of August 30, 1892, to De Camp would seem to corroborate such statement. But, assuming that Sheives did then claim to be there to adjust for the company, and that the company had sent him there for that purpose, it is very clear that he was given no power or authority in any other matter, and was not in any way held out to possess any power to bind the company in respect to any other matter.

Upon the trial the question as to whether the company had waived the service of proofs of loss within 60 days was left to the jury. In that connection the defendant asked the court to charge that, "upon the undisputed evidence in this case, Sheives was at most a special agent, with limited power, and had not the power to waive proofs of loss by either his acts or words." This request was declined, and such refusal was an error, which evidently must have greatly prejudiced the defendant. Concede that Sheives was there to adjust the loss, the plaintiff does not claim that he assumed to have any further or other authority. The policy expressly provides that "the company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for." Here, it seems, the company reserved to itself the right to go on and ascertain and adjust the loss within the 60 days without thereby waiving the requirement that proofs of loss be served upon it. Even though the amount of the loss be agreed upon, it does not necessarily follow that a liability to pay anything is conceded. From the statements required to be given in the proofs of loss, it is apparent that the company relies upon them for information, which is very necessary for it to have in passing upon the validity and good faith of the claim. Therefore the company waives nothing by agreeing upon the amount of the loss during the 60 days; nor could a mere agent sent by it to make such an adjustment, by anything that he could say or do, waive the requirement in the policy as to the service of the proofs of loss; and particularly could he not, in the face of the provision in the policy that no agent whatever shall have power to so waive any requirement or condition contained therein. The plaintiff had testified that Sheives had told him that it would not be necessary to write to the company any more about it, and that, if he heard nothing within 10 days, the company would pay, and that it had 60 days to pay in; that, relying on such statements, he waited 60 days, and then wrote to Thomas, the local

agent, a letter, which brought from him the letter of October 31st. Now, clearly, the refusal of the trial judge to tell the jury that such a statement by Sheives could not properly be considered as a waiver by the company must have been very prejudicial to the defendant. The jury undoubtedly believed the plaintiff, and, in view of the fact that it is extremely difficult to discover any fact whatever indicating that any agent of the company having any pretense of authority to do so has waived the service of the proofs of loss, they undoubtedly excused the plaintiff from serving them, on the ground that Sheives told him he need not.

We do not now consider the question whether, in this record, there is any evidence to sustain a finding that the company had waived the service of such proofs; but we do hold that such a waiver should not be predicated upon any act or statement of Sheives, and that it was error not to so instruct the jury. And this conclusion is not in conflict with anything that has been held by the court of appeals in this case. We have carefully examined their opinion, and do not find it anywhere intimated therein that Sheives' acts should be considered as binding upon the company. A prominent fact pointed to in that opinion is that within the 60 days the plaintiff and his attorney went to the general office of the defendant in New York City, and were there referred to De Camp and Thomas as the agents having the matter in charge. But in the record now before us, it appears that the visit to New York was not until February, 1893, some months after the plaintiff's 60 days had expired, and after Thomas' letter of October 31st, which is given much prominence in that opinion. So that we cannot now ascribe any delay in sending in his proofs to anything the plaintiff then learned; nor can anything that was then said be taken as authority to Thomas to write that letter. On the whole record it would seem that the facts now bearing on the question of the defendant's waiver are not such as were before the court of appeals. But, however that may be, it is clear that the question of Sheives' authority was not passed upon by that court.

There is a further feature of this case which seems to require a new trial. It is conceded that this building stood upon leased ground, and that, therefore, by the terms of the contract of insurance, the policy was void. The answer by the plaintiff is that in the fall of 1890 he told Thomas, the local agent, with whom he negotiated, and from whom he received the policy in suit, that the building was on leased ground, and that it was occupied only a portion of the year, when milk could be procured from the adjacent farmers. Hence he claims the company had knowledge of the facts when it issued the policy, and therefore must be deemed to have waived those conditions. But it appears that Thomas was not, in the fall of 1890, an agent of the defendant. He was appointed by written instrument dated on May 8, 1891, and which specifically defines his powers. Knowledge given to him before that date is not knowledge to the company, unless it was present in the mind of Thomas when he issued the policy; and the burden was with the plaintiff to make it clearly appear that it was so. Constant v. University, 111 N. Y. 604, 613, 19 N. E. 631, 2 L. R. A. 734, 7 Am. St. Rep. 769. Thomas

testified that at the time he insured this building he had no knowl-
edge or information that it was on leased land. He denies that the
plaintiff told him about it in the fall of 1890, but in that respect the
jury have adopted the plaintiff's statement. But what right have
they to conclude that he recollected it when the policy was issued?
The plaintiff's evidence does not go to that extent. Nothing indi-
cates that Thomas did then remember it. Nothing that I can dis-
cover contradicts his statement that he did not. His denial of the
plaintiff's statement that he was told in 1890 is not inconsistent with
his honesty, because it may be that he at once forgot it, and that it
has not since been recalled to his memory. It seems to me that a
jury may not find knowledge in the mind of Thomas without some
evidence to contradict his statement that he did not have it. They
may not charge the defendant with knowledge of this fact, and so
impose a liability to pay this claim upon it, because they cannot see
how Thomas could have forgotten the statement the plaintiff claims
to have made. It is claimed to have been made at a casual conversa-
tion had on the ball ground, while the plaintiff was engaged in the
game, and was not at a time when negotiations were being had con-
cerning the insurance of this or any other building. It was not a
fact which would then be liable to impress itself on Thomas' memory.
We are of the opinion that the evidence does not warrant the con-
clusion that the defendant had knowledge that the building stood
upon leased ground, and that, therefore, the verdict, which is based
upon such conclusion, should be set aside.

For these reasons the judgment must be reversed.

KELLOGG, J., concurs. EDWARDS, SMITH, and CHASE,
JJ., concur on last ground stated in opinion.

Judgment and order reversed, and new trial granted, with costs to appel-
lant to abide event.