BERTHA T. SOULIER vs. FALL RIVER GAS WORKS COMPANY.

Bristol.    October 25, 1915. — May 16, 1916.

Present: LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Requests and rulings.    *Negligence,* Of gas company.    *Gas Company.    Evidence.*

A presiding judge properly may refuse to make a ruling that is based on the assumption of the truth of the testimony of witnesses called by the party asking for the ruling which the jury are not bound to believe.

In an action against a gas company for personal injuries sustained by reason of negligence of the defendant's servants in turning on the gas in the house occupied by the plaintiff without first stopping up an open gas pipe that had been left when a gas stove was removed by the former tenant, the defendant asked the judge to rule that there was no evidence that any servant of the defendant turned on the meter.  There was evidence that two employees of the defendant, who put in the meter, which was in the cellar, after they had done so came up stairs and tried to light the gas in the kitchen, and that, when they found that it would not light, they left the house without returning to the cellar, saying that they must send the "drip-man," and that afterwards when the drip-man had come and had pumped the drip out in the yard, the gas escaped which caused the plaintiff's injuries.  *Held,* that the facts that the two employees tried to light the gas in the kitchen and left without returning to the cellar warranted a finding that they left the gas turned on.

In the same case the plaintiff testified that after the drip-man had pumped the drip out in the yard he went through a door from the yard into the cellar and then came into the kitchen where he lit the gas, that the plaintiff, who was there, said to him that she smelt "gas awful strong," to which he replied, "You smell the gas from my hands.  It comes from my hands and clothes, I am full of it;" whereupon the plaintiff said, "You sure it's all right, everything is all right, you sure?" and the drip-man replied, "Everything is all right."  It was admitted that it was the defendant's duty "to see everything was tight in regard to escaping gas."  There was evidence that the two employees, who could have been found to have left the gas turned on, reported to the defendant that they left it turned off.  *Held,* that, if the defendant's employees left the gas turned on and the defendant sent the drip-man to pump out the drip without notifying him of that fact, that could have been found by the jury to have been an act of negligence, even if the reason for not notifying him was that the two employees had reported that they left the gas turned off.

In the same case it was *held* that the jury were not bound to believe certain testimony of the drip-man, which was not contradicted, to the effect that it was no part of his duty to see that no jets were open, that he had a right to assume that the plaintiff had been using the gas "right along" and that he was sent to pump out the drip because of "poor pressure."

In the same case the plaintiff testified that, after the drip-man left, the smell of gas

got stronger and stronger, yet, after she had gone out into the yard to take a pitcher of water to her children, she went back into the pantry and there was overcome by the gas and became unconscious. She was asked on her cross-examination, why, if the gas smelled stronger and stronger, she went back into the house, and answered that she went back because she believed " what he [the drip-man] had said, that it came from his hands and clothes, and I believed the smell was still in the house." *Held,* that on the facts disclosed by the evidence the jury were warranted in finding that by the time the plaintiff went back she had been affected so far by the escaping gas that she was not in a normal condition and that therefore her act of returning to the pantry was not as matter of law a failure to exercise ordinary care.

LORING, J.  On moving into a house which had been unoccupied for six months, the plaintiff sent to the defendant gas company "to put in a gas meter." This was in the week before the seventeenth of June, which in the year in question fell on a Tuesday. On some day in the middle of that week, two employees of the gas company came to the house to put up the meter. After putting up the meter, which was in the cellar, they came into the plaintiff's kitchen and tried unsuccessfully to light the gas there. They found that no gas was coming through the pipe and, without returning to the cellar, they left, saying that they would have to send the "drip-man." On Saturday of the same week another person came from the gas company, went down cellar and from there went up into the kitchen. He tried to light the gas and found it would not light and said he would have to send the drip-man and left. On the following Tuesday, the seventeenth of June, one Laroche ("the drip-man") came to the house. He pumped the "drip out" in the yard, then he went into the cellar through a door leading directly into it from the yard and then came into the kitchen. On coming into the kitchen he struck a match and lit the gas, whereupon the plaintiff said to him that she smelt "gas awful strong" to which he answered "You smell the gas from my hands. It comes from my hands and clothes, I am full of it," to which the plaintiff replied "You sure it's all right, everything is all right, you sure?" and he said "Everything is all right." At the time that Laroche came to the plaintiff's house she was getting dinner for her children who had come home early because it was "circus day." She gave the children their dinner on a plate and they took it out in the yard because of the smell of gas in the house. After taking a pitcher of water to the children in the yard the plaintiff came back into the house

to take "the pot off the stove" and put it in the pantry. She took the pot into the pantry, took some potatoes out of the pot and put them in a dish. She testified that after that: "I don't remember any more. When I next remembered I was out in the yard sitting." The true explanation of the escape of the gas was found out after the accident. After the accident it was found that the tenant who had moved out six months before the plaintiff took the house had a gas stove. On moving out the tenant unscrewed this stove from the gas pipe, laid a piece of wood over the end of the open gas pipe and left the house with the pipe unplugged. No gas came out of the unplugged pipe until the drip was pumped out because the water in the drip prevented the gas coming into the house; but when the drip was pumped out by Laroche the gas came through the drip into the house and escaped through this unplugged pipe.

There was some conflict in the evidence, but the jury were warranted in finding that these were the facts of the case.

At the conclusion of the evidence the defendant asked the presiding judge to give the five rulings * set forth below in the note. The judge refused to give these rulings and the defendant took an exception to that refusal. The jury found for the plaintiff and the case is here on these exceptions.

1. It must be taken on this record that the case was tried on the footing that it was admittedly the duty of the defendant to turn on the gas and to see that everything was tight in regard to

---

* The judge was *White*, J. The five rulings refused by him were as follows:

"1. Upon the whole evidence the plaintiff cannot recover.

"2. Laroche, in doing what he did or saying what he said in the house of the plaintiff, was not acting as the servant of the defendant but as the agent of the plaintiff.

"3. There is no evidence that any servant of the gas company turned on the meter."

"7. If the jury find that the plaintiff was told in the house by the gas man Laroche that the smell of gas in the house came from his hands and clothes, that after the gas man had left the house and gone away, the plaintiff knew that the smell of gas was growing stronger and stronger but continued to remain in the house, and as she testified, went back into the house from out in the yard, she was not in the exercise of due care and cannot recover.

"8. If the plaintiff remained in the house, and went back into the house from the yard. in the manner and under the circumstances testified to by her, she was not in the exercise of ⸍       ⸍d cannot recover."

escaping gas. In his charge to the jury the presiding judge said: "I understand from what they (the defendant's servants) say in regard to their duty there, that it was their duty to see everything was tight in regard to escaping gas." To this no exception was taken. In fact no exception was taken to the charge. The only exception taken was that taken to the refusal to give the rulings asked for by the defendant. Under these circumstances the question which arose in *Flint* v. *Gloucester Gas Light Co.* 3 Allen, 343, did not arise here.

2. The defendant's first contention is that on the evidence the jury were bound to find (as the defendant asked the judge to rule in the third request) "that there was no evidence that any servant of the gas company turned on the meter."

This contention is based upon the fact that two witnesses called by the plaintiff testified that they went into the cellar immediately after the plaintiff was overcome by gas and found a spike through a hole in the arm of the meter by which the gas was turned on to the house through the meter. And the defendant's employees who put up the meter in the middle of the week, testified that they did not turn on the gas, that when they left the gas was not turned on and that there was then no spike through the arm of the meter. One difficulty with this contention is that the jury were not bound to believe the testimony of the witnesses called by the defendant. And without their testimony the proposition relied on by the defendant was not made out. As was said in *Cain* v. *Southern Massachusetts Telephone Co.* 219 Mass. 504, 507: "The time has long gone by when it ought to be necessary to refer to the doctrine of *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314."

But the more satisfactory answer is that if the jury believed the plaintiff's testimony they were warranted in finding that the gas was turned on by the employees who put up the meter in the middle of the week and that they left it turned on, although they reported to the defendant company that they left the gas turned off. The plaintiff testified that after the two employees had put in the meter they both came up stairs and tried to light the gas at a fixture in the kitchen and found that they could not get any light and thereupon without returning to the cellar they left the house, saying that they must send the "drip-man." The fact that these

two employees tried to light the gas in the kitchen was evidence warranting a finding that at that time the gas was on, and since they left without returning to the cellar there was evidence that they left it on.

3. The next contention of the defendant is that the company is not bound by Laroche's statement (testified to by the plaintiff) that "Everything is all right." This is based upon the fact that Laroche testified that it was no part of his duty to see that no jets were open; that he had a right to assume (1) that the plaintiff had been using gas "right along" and (2) that he was sent to pump out the drip because of "poor pressure." This is based upon the assumption that because the evidence was not contradicted the jury were bound to believe it. But that is not so.

It was admitted that it was the defendant's duty "to see everything was tight in regard to escaping gas." If the defendant's employees left the gas turned on and the defendant sent Laroche to pump out the drip without notifying him of that fact, that was, or could have been found by the jury to have been, an act of negligence even if the reason for not so notifying Laroche was that the first employees who left the gas on reported that they left it off.

Under these circumstances it is not necessary to consider the effect of the testimony of the assistant manager of the gas company. He testified in answer to the question "If your drip-man should go into a house after pumping a drip, and find a strong odor of gas there, and the woman of the house complains of the strong odor of gas, would there be any duty then, on the part of your drip-man to investigate what caused that flow of gas?" that "If the drip-man knew that was a strong odor of gas and not the odor of drip water, he should investigate."

4. The defendant's last contention is that the plaintiff was as matter of law guilty of contributory negligence because she testified that the smell of gas got stronger and stronger after Laroche left and yet she went back into the pantry after she had taken the pitcher of water to the children. She was asked why, if the gas smelled stronger and stronger, she went back into the house, and she answered that she went back into the house "Because I believed what he [Laroche] had said that it came from his hands and clothes, and I believed the smell was still in the house." But

the jury were warranted in finding that by that time she had been so far affected by the escaping gas that she was not in a normal condition and for that reason her act of returning to the pantry was not as matter of law a want of ordinary care.

We have examined all the cases cited by the defendant and find nothing in them which requires special notice.

*Exceptions overruled.*

*A. J. Jennings,* (*I. Brayton* with him,) for the defendant.
*J. A. Kerns,* for the plaintiff, was not called upon.