## GEBBY v. CARRILLO et al.

### SYLLABUS BY THE COURT.

1.   In a suit by the holder of a negotiable instrument acquired from the payee before maturity, where the maker shows fraud in the inception of the instrument, the burden is upon the holder to show that he acquired title to the paper in due course.          P. 124

2.   To remove the burden thus imposed, the holder was required to show by competent evidence: (1)   That he became the holder of the note before it was overdue and without notice that it had been previously dishonored, if such was the fact;   (2)   that he took it in good faith for value; and   (3) that at the time it was negotiated to him he had no notice of any infirmity in the note, or defect in the title of the person negotiating it.          P. 124

3.   To justify the court in directing the verdict in favor of the holder, or in setting aside a verdict against the holder, the testimony of the bona fide character of the holder must not only be without substantial evidence tending to impeach it, but showing in its support must be so clear and unequivocal as to leave no room for difference in opinion concerning it among fairminded men.          P. 129

4.   In this case the only evidence of the bona fide purchase of the note in question was given by the holder.   Evidence examined, and **held** that his evidence was possible of contradiction in the circumstances; that its truthfulness and accuracy were open to a reasonable doubt upon the facts of the case; that the circumstances and the interest of the witness furnished a proper ground for disbelief of his statements by the jury.          P. 129

Appeal from District Court, Grant County, Mechem, Judge.

Action by George H. Gebby against Celestino Carrillo and others.   Judgment for defendants, and plaintiff appeals.   Affirmed.

JOHN F. SIMMS and M. E. HICKEY, both of Albuquerque, for appellant.

VELLACOTT & FOWLER, of Silver City, for appellees.

OPINION OF THE COURT.

ROBERTS, J.   This action was instituted in the court below by appellant, George H. Gebby, against Celestino Carrillo as the maker, and other named defendants as indorsers, of a note for $7,500, with interest and attorneys' fees.   The note was given at Silver City, N. M., dated August 3, 1914, due February 3, 1915, and bore interest at the rate of 8 per cent. per annum from date.   The note was executed to the Capital Savings & Investment Company, a corporation, and bore the indorsements of the corporation, by J. F. Cleveland, its president, J. F. Cleveland, individually, and R. C. Markley.   Trial was had to a jury, and the jury returned a verdict for the full amount of the note, interest, and attorneys' fees against the indorsers, and for one-half the amount of the note, interest, etc., against the maker, Celestino Carrillo. The court set aside the verdict as to Celestino Carrillo, and granted Gebby a new trial as to him.   Judgment was entered on the verdict against the indorsers.   Upon the second trial a jury returned a verdict for the defendant Carrillo.   Motion for a new trial was made by appellant and overruled by the court.   To the action in the lower court appellee interposed as a defense that he was deceived in signing the note, it having been represented to him that he was signing an option contract, and that appellant was not a good-faith purchaser for value, etc.

The facts in the case, as disclosed by the evidence of appellee, are as follows:   Appellee was engaged in the liquor business in a small settlement near Silver City, He was worth, according to his testimony, from $10,000 to $12,000 in property.   Two men, Pettingall and Bailey, came to his place of business with a man named Edwards. Appellee spoke no English, speaking the Spanish language.   Edwards acted as interpreter for Pettingall and Bailey.   The purpose of the visit was to sell appellee stock in the Capital Savings & Investment Company. Appellee refused to purchase any stock, and the next day the two agents returned to his place of business in company with Pedro Gomez, Clyde Jones, and Mr. Edwards.   Gomez acted as interpreter and interpreted to

appellee as directed by the agents. Appellee's testimony in regard to the proposition made to him and the facts was as follows:

"Then Mr. Gomez interpreted the business which they had. They told me that those agents wanted to sell me some shares in Plata Vista. I told them that I didn't have any money to buy any shares with. I told them they had been there before and I had told them I was not interested in it. Mr. Bailey told Mr. Gomez to tell me after they had been back there trying to get me to buy some shares, and I always refused it because I was not able to buy them, and I was not interested in that kind of transaction. Then, after they were not able to get me to buy shares, Mr. Gomez interpreted to me to do something as a prominent and known man in Santa Rita; that I was well known among the Mexicans and amongst some of the American men, and they asked me to do a favor for them; that is what the agents told the interpreter to tell me; that if I didn't want to buy any shares, just do them a favor and give my name to be put on, to put my name on a list, among some of the prominent men of Santa Rita, and that would be as satisfactory to them; that they could make more security for me with a written contract, and I saw them make the contract there in writing. This writing referred that I was to take $7,500 in shares. Of course, I was not forced to do it, from that time that paper was made until six months afterwards. From the time that that paper was written I was not under no compromise until six months later— six months afterwards. The agents offered to make a written statement there where that paper would show I was under no compromise to attend to that contract at any time. When they made out this statement I signed it; they read it to me, and I was satisfied that I was not subject at any time to attend to that contract."

He further testified that Mr. Gomez read to him the contract which was prepared, and that as the contract was read to him and interpreted it was simply an option contract by which he was to have the option for six months of purchasing the shares of stock offered for sale; that he signed the papers as presented to him after they had been interpreted; that he did not know he was signing a promissory note, and he would not have signed it save for the deception practiced upon him. His testimony was corroborated by one other witness who was present at the transaction. Gomez, the interpreter, testified that he did not read and interpret the contract, but stated to appellee such facts as were communicated to him by the agents, and his version of the fact was in ac-

cord with the story told by appellee, save that he said that he did not read and interpret the contract. Two other witnesses testified to the contrary, and said that appellee was fully informed that he was signing a note and the contract in question.

As to the purchase of the note by the appellant, he was the only witness testifying as to the facts. His testimony, in substance, was as follows: That he resided in Phœnix, Ariz.; had never been in Grant county or Silver City; did not know Carrillo, the maker of the note; knew Markley, one of the indorsers, but slightly; had known Cleveland for about ten years; had never theretofore purchased any notes from Cleveland or Markley, but that Cleveland had made some loans to him prior thereto on real estate mortgages; that Cleveland came to his house in Phœnix, and told him that he had the note in question and desired to sell it to him; that he asked Cleveland if the note was given in good faith and if Carrillo was good; Cleveland assured him that the note was given in good faith and that Carrillo had signed it and was good; that Cleveland also had a letter from Markley, stating that the note was all right and that Carrillo was financially responsible; that he paid for the note the sum of $6,500, as follows: Two certificates of deposit owned by appellant in the People's Bank & Trust Company of Silver City for $1,000 and $4,000, respectively, and a certificate of deposit owned by his wife on the same bank for $1,500; that these certificates had been purchased theretofore by appellant at a slight discount, the exact amount of which he was not able to state; that the certificate bore interest at a rate of interest exceeding 4 per cent., but at just what rate he did not remember; that he had paid for the certificates which he owned in cash $4,200, and a note for $750, which had been given to him by the Capital Savings & Investment Company. The certificate which his wife owned had been given to her by Cleveland in payment of some indebtedness which he owed her. Appellant offered no proof to show the value of the certificates at the time he purchased the note in question, or that the bank issuing them was solvent at that time. He testified

that he had paid for the certificates which he purchased by check, but the checks were not offered in evidence. He stated that he knew that the note was given for stock in the Capital Savings & Investment Company.

Appellant relies upon three propositions to secure a reversal, as follows:

"(1)   On the face of the defendant's own testimony, in signing the note he was guilty of such fraud, negligence, and bad faith as to deprive him of the right to defend against a bona fide holder of the note on any such ground.

"(2)   Carrillo actively participated in the fraudulent scheme from which he later suffered, and cannot complain as against an innocent party.

"(3)   Even if Carrillo was defrauded as to the character of the instrument he signed, this defense is not available to him against a bona fide holder of a negotiable note."

The first proposition advanced by appellant requires no consideration, because, if his statement be accepted as true, we must assume that the jury found that he was not a bona fide holder of the note for value. Certainly, under the facts disclosed, had the note been in the hands of the original payee, who testified to the facts, it would have constituted a defense to the note; and the crucial question in this case, which will be considered later, is whether or not the evidence shows that appellant was a bona fide holder of the note. We do not think the evidence shows that appellee actively participated in the fraudulent scheme, if such there was, of the agents to induce others to suscribe for stock. While it is true the agents told him that they desired the benefit of the use of his name as a suscriber to the stock, there is no evidence showing that appellee assented to the proposition. He, according to his testimony, simply agreed to take an option contract of $7,500 worth of stock for six months.

[1, 2]   The controlling question in the case is whether the jury was required, as a matter of law, under the evidence, to find that appellant was a good-faith holder of the note. As has been shown from what has been heretofore stated, appellee was the victim of an imposition

devised and executed by the agents to sell the stock, under the influence of which he signed the note in question. Assuming the sufficiency of the evidence to show fraud and imposition, the burden was upon the appellant to show that he acquired title to the paper in due course. Section 653, Code 1915.

To remove this burden he was required to show by competent evidence: (1) That he become the holder of the note before it was overdue and without notice that it had been previously dishonored, if such was the fact; (2) that he took it in good faith for value; and (3) that at the time it was negotiated to him he had no notice of any infirmity in the note, or defect in the title of the person negotiating it.

Section 646, Code 1915; Arnd v. Aylesworth, 145 Iowa, 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638; and as stated by the court in this case:

"And to justify the court in directing a verdict in her favor, the testimony of the bona fide character of her holder must not only be without substantial evidence tending to impeach it, but the showing in its support must be so clear and unequivocal as to leave no room for difference of opinion concerning it among fair-minded men. McNight v. Parsons, 136 Iowa, 397, 113 N. W. 858, 22 L. R. A. (N. S.) 718 (15 Ann. Cas. 665) 125 Am. St. Rep. 265."

Thus we see that in this case the burden was upon appellant to establish to the satisfaction of the jury that he was a bona fide purchaser of the note, and whether his evidence sufficiently satisfied the burden resting upon him, and made good his claim to be an innocent purchaser, was for the jury, unless the evidence was such that no fair-minded person could draw any other inference therefrom. Many courts hold that a denial of notice by the purchaser, though he be uncontradicted by any other witness, is not sufficient to justify a directed verdict in his favor or the setting aside of a verdict against him. The mere fact that the witness is interested in the result of the suit is sufficient to require the credibility of the witness to be submitted to a jury as a question of fact, and

that either a court or a jury is at liberty to disbelieve his testimony solely on the ground that he is interested. This is the general rule in New York, although there is ‿ authority there seemingly to the contrary. The following cases support this rule: Elwood v. Western Union Tel. Co., 45 N. Y. 549, 6 Am. Rep. 140; Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484; Roberts v. Gee, 15 Barb. (N. Y.) 449; Gordon v. Ashley, 191 N. Y. 186, 83 N. E. 686; Matter of Kindberg, 207 N. Y. 220, 100 N. E. 789; and many other cases, both of the Court of Appeals and inferior courts of New York, cited in the note to section 78, Moore on Facts. Many other courts follow the New York rule. Gregory v. Filbeck's Estate, 20 Colo. App. 131, 77 Pac. 369; Citizens' Savings Bank v. Houtchens, 64 Wash. 275, 116 Pac. 866; Keene v. Behan, 40 Wash. 505, 82 Pac. 884; Gosline v. Dryfoos, 45 Wash. 396, 88 Pac. 634; Ireland v. Scharpenberg, 54 Wash. 558, 103 Pac. 801; National Bank of Commerce v. Drewry, 70 Wash. 557, 127. Pac. 102; Rohweder v. Titus, 85 Wash. 441, 148 Pac. 583; Meardon v. Iowa City, 148 Iowa, 12, 126 N. W. 939; McNight v. Parsons, 136 Iowa, 390, 113 N. W. 858, 125 Am. St. Rep. 265, 22 L. R. A. (N. S.) 718, 15 Ann. Cas. 665; Laramore v. Minish, 43 Ga. 282; Brown v. Reed, 41 Ga. 604; Heierman v. Robinson, 26 Tex. Civ. App. 491, 63 S. W. 657; Park v. Johnson, 20 Idaho, 548, 119 Pac. 52; International & G. N. R. Co. v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 772; Prowattain v. Tindall, 80 Pa. 295; Bank v. Hoffman, 229 Pa. 429, 78 Atl. 1002; Sonnentheil v. Moerlein Brewing Co., 172 U. S. 401, 119 Sup. Ct. 223, 43 L. Ed. 492; United States v. Sing Lee (D. C.) 125 Fed. 627; Grand Trunk Ry. Co. v. Cobleigh, 78 Fed. 784, 24 C. C. A. 342. Some courts even go further, and hold that, even as to facts testified to by disinterested witnesses not contradicted, the party is entitled to have the jury pass upon such facts, and that the truth of the evidence is for the jury to determine. Seehorn v. Bank, 148 Mo. 256, 49 S. W. 886; Gregory v. Chambers, 78 Mo. 294; Steamboat City

of Memphis v. Matthews, 28 Mo. 248; Soulier v. Fall
River Gas Works Co., 224 Mass. 53, 112 N. E. 627.

The opposing rule is possibly best stated by the Court
of Appeals of New York in the case of Hull v. Littauer,
162 N. Y. 569, 57 N. E. 102, as follows:

"Generally, the credibility of a witness who is a party to the
action, and therefore interested in its result, is for the jury;
but this rule, being founded in reason, is not an absolute and
inflexible one.  If the evidence is possible of contradiction in
the circumstances, if its truthfulness, or accuracy, is open to a
reasonable doubt upon the facts of the case, and the interest
of the witness furnishes a proper ground for hesitating to
accept his statements, it is a necessary and just rule that the
jury should pass upon it.  Where, however, the evidence of a
party to the action is not contradicted by direct evidence, nor
by any legitimate inferences from the evidence, and it is not
opposed to the probabilities, nor, in its nature, surprising or
suspicious, there is no reason for denying to it conclusiveness.
Though a party to an action has been enabled, since the legis-
lation of 1857 (chapter 353, Laws of 1857), to testify as a
witness, his evidence is not to be regarded as that of a disin-
terested person, and whether it should be accepted without
question depends upon the situation as developed by the facts
and circumstances and the attitude of his adversary."

This case was an action for goods sold, and the defend-
ant testified that the contract was entire and had been
performed only in part.  The plaintiff knew the facts
equally as well as the defendant, and failed to testify in
regard to this point.  The fact that the plaintiff had
equal knowledge with the defendant as to the facts testi-
fied to by the defendant, and that he failed to contradict
or dispute the correctness of the testimony of the defend-
ant, possibly influenced the court to say that it was the
duty of the jury to believe the uncontradicted testimony
of the party.  This case cites the case of Lomer v. Meeker
25 N. Y. 361; but in that case, while the testimony was
given by a party, it was against his interest.  There the
plaintiff instituted suit against the maker and indorser
of a promisory note.  The testimony was given by the
indorser, and showed that the maker was not liable; but
the fact that the maker was not liable shouldered the
whole responsibility upon the indorser.  Many later cases
in New York and some other states follow these two cases,

and give them the effect of holding that the testimony of
an interested witness cannot be repudiated by the jury
as untrue without good reason.    The following cases
support this rule:   Kelly v. Burroughs, 102 N. Y. 93, 6
N. E. 109; Bank v. Weston, 172, N. Y. 259, 64 N. E. 946;
Johnson v. New York Central & Hudson River R. Co., 173
N. Y. 79, 65 N. E. 946; Electric Fireproof Co. v. Smith
113 App. Div. 615, 99 N. Y. Sup. 37; Madden v. New
York City R. Co., 50 Misc. Rep. 555, 99 N. Y. Supp. 320;
Kappes v. New York City R. Co., 50 Misc. Rep. 534, 99
N. Y. 322; Lewis v. New York City R. Co., 50 Misc. Rep.
535, 99 N. Y. Supp. 462; Wilson v. United Traction Co.
(Sup.) 88 N. Y. Supp. 122; Ferguson v. Harlem Sav-
ings Bank, 43 Misc. Rep. 10, 86 N. Y. Supp. 825; Tish-
man v. Kline (Sup.) 84 N. Y. Supp. 452; Sergent v.
Liverpool & L. & G. Insurance Co., 66 App. Div. 46, 73
N. Y. Supp. 120; Littlefield v. Lawrence, 83 App. Div.
327, 82 N. Y. Supp. 25; Money v. Fisher, 92 Hun, 347, 36
N. Y. Supp. 862; Van Nostrand v. Hubbard, 35 App.
Div. 201, 54, N. Y. Supp. 739; Hun v. Cary, 59 How.
Prac. (N. Y.) 426; Johnson v. Doll, 11 Misc. Rep. 345,
32 N. Y. Supp. 132; Hunter v. Hook, 64 Barb. (N. Y.)
468; Darling v. Hurst, 39 Mich 765; Burnham v. Norton,
100 Wis. 8, 75 N. W. 304; Brown v. Petersen, 25 App. D.
C. 359, 4 Ann. Cas. 980; Lange v. Cullinan, 205 Ill. 365,
68 N. E. 934; Tracy v. Tracy, 62 N. J. Eq. 807, 48 Atl.
533.    Other cases, pro and con, will be found collected in
notes to the cases of Brown v. Petersen, 4 Ann. Cas. 980;
Skillern v. Baker, 12 Ann. Cas. 243.

This court in the case of Bank v. Stover, 21 N. M. 453,
155 Pac. 905, L. R. A. 1916D, 1280, Ann. Cas. 1918B, 145,
followed the rule announced by the New York Court of
Appeals in the case of Hull v. Littauer, supra. Whether
we were right in that opinion is immaterial to a decision
in this case; for, even if the rule in the case of Hull v.
Littauer, supra, and that line of cases, be accepted as
correct, the testimony given by the appellant is possible
of contradiction in the circumstances and its truthfulness
and accuracy were open to a reasonable doubt upon the

facts in the case. In the case of Arnd v. Aylesworth, supra, the court in discussing a similar question said:

"It is important that this distinction be borne in mind in the consideration of cases like the one at bar, for it is quite possible that the testimony as a whole may be insufficient to justify an affirmative finding of bad faith on the part of the plaintiff, and still not be so conclusive of his good faith as to require a withdrawal of the question from the jury. Cox v. Cline, 139 Iowa, 128, 117 N. W. 48; Mace v. Kennedy, 68 Mich. 389, 36 N. W. 187. It is ordinarily to be expected in these cases that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place, and manner of the transaction, its conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, where taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law. Observing this principle, it has frequently been held that a denial of notice by the purchaser, though he be uncontradicted by any other witness, is not sufficient to justify a directed verdict in his favor. * * * Uncontradicted evidence is not sufficient to command a directed verdict where the inferences to be drawn from all the circumstances are open to different conclusions by reasonable men."

[3, 4] With this rule in view, let us examine the facts testified to by the appellant, and from such facts disclosed, and the failure to disclose other facts, determine the probability or improbability of his story. In the first place, he purchased a note for $7,500, bearing 8 per cent. interest, upon which the interest had accrued for three months, at a discount of $1,000, which in itself, was an item which the jury might properly take into consideration in determining the good faith of the transaction. In the second place, he testified that he gave for the note three certificates of deposit on a bank in Silver City, and was not able to state definitely just how much

he had paid for them, or what rate of interest the certificates bore, and did not show that the bank issuing the certificates was solvent. In the third place, he testified that he had given a check for over $4,000 as part payment for the certificates, and, although admitting that he had the check or that his attorney had it, did not put it in evidence. Fourth, he did not know the maker of the note, and relied upon a statement by the seller that the maker was good and that the note was given in good faith. Fifth, he did not show, or attempt to show, that either of the three indorsers of the note was solvent at the time of the purchase. He testified that he knew that the note had been given for the purchase of stock, but made no attempt to show that the stock had any value, or his lack of knowledge in regard thereto.

From the above we believe that the credibility of his evidence was for the jury. In addition to the above, the jury saw the witness, observed his manner and demeanor while testifying, his apparent candor and frankness, and upon all the facts, and from personal observation, they refused to give credence to his story, and held, necessarily, that he had failed to meet the burden which the law cast upon him. The trial court, having like opportunities for observation and determining the credibility of the witness and the truthfulness of his story, refused to set aside the verdict.

Because of the foregoing, the judgment of the district court must be affirmed, and it is so ordered.

HANNA, C. J. concurs.

PARKER, J., concurs in the result.