MODESTINA DELUCIA vs. THE LAWRENCE GAS COMPANY.

Essex.    March 9, 1960. — April 27, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Negligence*, Gas stove. *Evidence*, Matter of conjecture, Admissions and confessions. *Agency*, Admission by agent.

The plaintiff could not recover in an action by a cook employed in a catering establishment against a gas company for injuries sustained as a result of an explosion in a gas stove supplied with gas by the defendant, where the stove had not been purchased from or installed by the defendant and it was not shown that the defendant ever undertook any duty to inspect or repair it, and the evidence left the cause of the explosion in the realm of conjecture. [712–713]

In an action against a gas company which supplied gas to a stove in which there was an explosion injuring the plaintiff, evidence that men sent by the defendant, after working on the stove following the explosion, said "This stove will not trouble you any more" was not competent. [713]

TORT. Writ in the Superior Court dated February 5, 1957.

The action was tried before *Morton*, J.

The case was submitted on briefs.

*Raphael A. A. Comparone*, for the plaintiff.

*John Z. Doherty*, for the defendant.

SPALDING, J.    In this action of tort for injuries caused by a gas explosion alleged to have been due to the defendant's negligence, there was evidence of the following.    The plaintiff was employed as a cook in a catering establishment in Lawrence.    In the kitchen where she worked there was a gas stove which her employer had purchased from a dealer in Boston in 1948, and which he "had . . . installed." [1]    The stove had ten "top burners" and two ovens.    From the time of its installation to about two weeks prior to the accident on May 8, 1956, the stove had been in continuous use and "had

---

[1] There is no evidence that the stove was installed by the defendant.

functioned properly without any trouble or unusual incident." Around May 1, 1952, when the defendant changed from artificial to natural gas the "necessary adjustments . . . required by the change" were made on the stove.

A sister of the plaintiff, Mrs. Muraca, who also worked for the same employer, testified that about two weeks before the accident, when she was opening the right oven door of the stove, an explosion occurred and her "arms were singed by the flame or flash." Immediately thereafter, Mrs. Muraca "telephoned someone at the defendant's office and told them what had happened. No one from the defendant's office came to the premises in response to this call. The stove continued to be operated without incident until May 8, 1956."

On the morning of May 8 the plaintiff was working in the kitchen with five other employees. All of the top burners were in use. The plaintiff, who had been assigned the job of toasting bread in the ovens, set the thermostat at 400 (the degree of heat required for toast), ignited the ovens and placed trays of bread in each oven. After a tray of bread had remained in the oven for ten minutes, it would be removed and replaced by another tray. The plaintiff had been doing this every ten minutes for about an hour and a half. Each time she noticed that the "flame in the opening allowed for lighting the burner [was] going." "At the time of the accident she had just opened the right oven, saw a flame in the stove, and then there was an explosion with a loud noise and of such force as to throw her backward about five feet." As a result of the explosion the plaintiff was injured. Before this explosion and the earlier one, no odor of gas was detected by anyone. Shortly after the accident the defendant was notified and two men were sent by it who worked on the stove for about an hour; the stove has worked properly ever since.

A duly qualified expert called by the plaintiff testified that he had examined the stove and that in his opinion both explosions were due to the same causes, which he described as follows: The stove is equipped with two safety devices

to prevent the accumulation of raw gases in the oven. One is a "valve connected close to the thermostat which controls the flow of gas sufficient for producing a high flame required for 400 degree heat which then closes and then the only gas to the main burner is through a by-pass valve which provides gas sufficient for a low flame." Should "the low flame, for some reason go out, then the second device comes into play. This is the pilot light close to the opening allowed for the insertion of the lighted match with which to light the oven." The pilot light is invisible to the operator and is lighted and stays lighted while the oven burner is in operation; its function is to "light any unused raw gas emitted from the burner." In the opinion of the witness both explosions were "due to the thermostat regulator and the oven pilot light not operating properly so that raw gas was emitted from the burner into the oven without the pilot light furnishing the necessary flame to light the raw gas." When the oven door was opened "the accumulated gas in the oven rose upward and became sparked by the flame of the nearest top burner" and this was the cause of each explosion.[1]

On cross-examination the plaintiff's expert conceded that if, as the plaintiff testified, she saw flame in the oven when she opened the door this would "knock out his theory in this case because there would have been lighted gas in the oven."

At the close of the evidence the judge directed a verdict for the defendant subject to the plaintiff's exception. The plaintiff also excepted to a ruling on evidence and to the refusal of the judge to submit the case under leave reserved.

1. The plaintiff was not entitled to go to the jury. The stove, which was acquired by the plaintiff's employer eight years before the accident, was not purchased from the defendant; nor is there any evidence that it was installed by the defendant. There was no evidence that the defendant ever undertook any duty to inspect or repair the stove. The

---

[1] No other evidence as to the cause of the explosions was introduced.

testimony of Mrs. Muraca that after the first explosion she "telephoned someone at the defendant's office and told them what had happened" does not amount to an assumption of such a duty on the part of the defendant. Moreover, the theory of the explosion (accumulation of gas and defective thermostat and pilot) advanced by the plaintiff's expert was, as he conceded, "knock[ed] out" when he learned that the plaintiff had testified that when she opened the oven door she "saw a flame in the stove." The cause of the explosion was thus left in the realm of conjecture.

2. One Zompa, a chef under whom the plaintiff worked, testified on direct examination that he was present when the two men sent by the defendant came to work on the stove shortly after the explosion on May 8. After stating that he had talked with the men he was asked, "What if anything did either of them say to you?" Upon objection of the defendant this question was excluded. Counsel for the plaintiff stated that the "expected answer was not an admission of liability" and would be: "This stove will not trouble you any more." To the exclusion of this evidence the plaintiff excepted. Despite the plaintiff's disclaimer that the expected evidence was not offered as an admission, she seeks in this court to support its admissibility because it was "a recognition of the defendant of its duty to either repair the defect or shut off the gas in accordance with the duty imposed by law upon the defendant." Such a change of position is not open to the plaintiff. But, apart from this, the evidence was not competent. It was not an admission of anything, and even if it could be tortured into an admission, it would not bind the defendant. *Rankin* v. *Brockton Pub. Mkt. Inc.* 257 Mass. 6, 10–11.

3. The exception to the refusal of the judge to submit the case under leave reserved is without merit.

*Exceptions overruled.*