MARJORY E. BRENNAN & another *vs.* ARLINGTON GAS LIGHT
COMPANY & another.

Middlesex.    November 7, 1960. — January 30, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Gas Company. Negligence,* Gas stove. *Proximate Cause. Nuisance.*

A gas company which undertook to make the adjustments in home gas
   appliances necessitated by the company's changing the gas supplied
   thereto from manufactured to natural gas had a duty to its customers

to use reasonable care to make the appliances safe for use with natural gas.  [683]

Evidence of the circumstances in which, some days after agents of a gas company had adjusted the oven of a gas stove in a house for the use of natural gas instead of manufactured gas previously supplied by the company, the householder, while using the oven, was injured by a burst of flame from it upon opening its door, and evidence that the burst of flame was due to incomplete combustion of the gas in the oven and consequent presence there of unburned gas which was ignited because of the inrushing air when the door was opened, warranted findings of want of due care on the part of the agents in adjusting the oven and of a causal connection between their negligence and the accident. [683]

A gas company could not be held liable to a householder on the ground of having created a "nuisance" through making adjustments of the oven of a gas stove in the house resulting in an explosion of gas in the oven and consequent injury to the householder.  [683]

Tort.  Writ in the Superior Court dated July 7, 1953.

The action was tried before *Nagle,* J., who ordered verdicts for the defendants on all counts of the declaration. The plaintiffs alleged exceptions.

*Frederick A. McDermott,* (*William J. O'Neill* with him,) for the plaintiffs.

*Parker Brownell,* (*Samuel Adams* with him,) for the defendants.

Williams, J.  This is an action of tort by Marjory E. Brennan and her husband Daniel A. Brennan to recover respectively for personal injuries and consequential damage caused by an explosion of gas in their home in Winchester on July 8, 1952.  The defendants are Arlington Gas Light Company (gas company) and Conversions and Surveys, Inc. (conversions company).  The plaintiffs allege in counts 1 and 2 of their substitute declaration negligence on the part of the gas company; in counts 5 and 6 negligence by the conversions company; in counts 3 and 4 the creation of a nuisance by the gas company; and in counts 7 and 8 the creation of a nuisance by the conversions company.

There was evidence that the plaintiffs owned a gas-oil combination cooking stove purchased in 1949 which had been used without repairs, servicing or adjustment until May, 1952.  It was a stove of "conventional type" with burners on top and an oven which was heated by a "separ-

ately controlled gas burner unit.'' The fuel for the stove was manufactured gas supplied by the gas company.

On May 12, 1952, the gas company changed the gas supplied to its customers from manufactured to natural gas. The change necessitated certain adjustments of the home appliances in which manufactured gas had been used to make them suitable for use of the new gas. To make the conversions, the gas company employed the defendant conversions company as its agent and notified its customers not to use oven burners until its agents had completed the work of conversion. Natural gas has about twice the heating value of manufactured gas and requires more air to effect its proper combustion.

Early in June ''agents of the defendants'' converted the burners on top of the plaintiffs' stove for the use of natural gas. Later in the month two other agents came to the house to ''fix the oven'' and when they had finished one of them told Mrs. Brennan it was then ''perfectly all right'' to use the oven. After their visit the oven was not used until July 8 and in the meantime ''no repairs, servicing or changes [were] made in the oven or the stove by Mrs. Brennan or anyone else.''

On July 8 Mrs. Brennan lit the oven burner and closed the oven door in order to preheat the oven for the roasting of a chicken. She noticed that the flame from the burner was a long yellow flame. Fifteen minutes later she opened the oven door and ''a big flash or burst of yellow fire came from the oven'' and inflicted on Mrs. Brennan the injuries of which she complains. The occurrence was reported to the gas company and a man came and examined the stove. The next day two men came and worked upon it for about two hours. ''Under the conversion contract between the defendant corporations, . . . [the conversions company] would investigate a report of any such accident as the one in question, during a period which included the month of July, 1952, and if the work of conversion was found not to have been properly done, its agents would return and correct it.'' ''If a burst of yellow flame comes from the oven when the oven door is opened after having been closed

for fifteen minutes it would be due to the presence in the oven of unburned natural gas or other combustible gases resulting from the incomplete combustion of the natural gas.'' Ignition of the unconsumed gas would be caused by the sudden inrush of ''atmospheric air.''

The physical changes necessary for conversion are accomplished by enlarging the holes or ''ports'' through which the gas flows out of each burner; by the removal of plugs or ''spuds'' which control the gas supplied to the burners and their replacement by new spuds with holes of a smaller diameter; and by changes in the ''air-intake cap'' which controls the amount of ''primary'' air to be mixed with the gas. Such changes are made by turning a perforated disc known as the ''shutter.'' ''The proper setting is determined visually by lighting the burner and adjusting the shutter setting by turning the shutter so that the flame produced at the burner is blue, which is the result of a proper gas-primary air ratio, and not yellow, which is the result of an improper setting, with an insufficient supply of primary air. After the conversion operation is complete, change in the adjustments of the ports or the spuds would require dismantling of the stove. Change in the adjustment of a shutter would require a turning of the shutter, which would require either deliberate tampering with the shutter itself, or a combination of a loose setscrew and a jarring of the shutter sufficient to cause it to turn from the position in which it had been set. Jarring of the shutter alone would not cause a change in the adjustment, since the shutter would not turn from the position in which it had been set unless there was also a loose setscrew.''

At the conclusion of the evidence the judge, on motion, directed verdicts for the defendants on all counts subject to the plaintiffs' exceptions.

The jury could have found that the burst of flame was caused by the ''atmospheric air'' coming in contact with a collection of unconsumed gas which in turn had accumulated because of the improper adjustment of the oven burner. The stove had not been purchased or installed by the gas company and it had assumed no duty in respect

to maintenance until the stove was converted for the use of natural gas. *Cadogan* v. *Boston Consol. Gas Co.* 290 Mass. 496, 500. *DeLucia* v. *Lawrence Gas Co.* 340 Mass. 710, 712. When, however, it made the conversion the gas company and its agent, the conversions company, assumed the responsibility of properly adjusting the stove for the use of the new gas. Its assumption carried with it the duty to use reasonable care to make the plaintiffs' appliance safe for its contemplated use. *Barabe* v. *Duhrkop Oven Co.* 231 Mass. 466. *Kelly* v. *Pittsfield Coal Gas Co.* 257 Mass. 441. *Ferguson* v. *Boston Gas Light Co.* 170 Mass. 182, 191. *Soulier* v. *Fall River Gas Works Co.* 224 Mass. 53. *Barbeau* v. *Buzzards Bay Gas Co.* 308 Mass. 245. *Friese* v. *Boston Consol. Gas Co.* 324 Mass. 623. See *Powers* v. *Wakefield,* 231 Mass. 565.

The contention of the defendants that, assuming this duty, the evidence was insufficient to warrant a finding of negligence in effecting the conversion, or of causal connection between the work on the stove and the subsequent accident to Mrs. Brennan, cannot be sustained. There was no trouble with the stove before the agents of the defendants made the necessary adjustments. Thereafter the oven was not used until the day of the accident.

Although there was no testimony as to the location of the shutter on the oven burner there was evidence that in most stoves the shutter is "pretty well concealed" and is in such a position that "a person couldn't get at it" unless he "set about 'definitely to make repairs' or changes in it." The jury could have found that no repairs or changes were made in the oven after the adjustment by the defendants and that it was more probable that the burst of flame was caused by an improper adjustment than, as suggested by the defendants, by a subsequent "tampering" with the shutter, the loosening of a set screw, or the presence of some foreign material.

There was no evidence warranting verdicts for the plaintiffs on the nuisance counts. See *Delano* v. *Mother's Super Market, Inc.* 340 Mass. 293, 297.

*Exceptions sustained.*